BLEVINS, ADM'R, &C., vs. BUCK ET AL.

1. The act of 1846, "to protect the rights of married women," (Pamphlet Acts 1845-6, p. 23,) does not, of itself, and without any act on the part of the wife, destroy her right to a settlement out of her choses in action and equitable interests as it existed before the adoption of that act; but the intention of the act was, to tender to her what was supposed to be a more valuable right, and to leave it to her election to claim the benefit of the act, or to assert her equity to a settlement without regard to its provisions.

2. After the rendition of a final decree, on a bill filed under this act, vesting the property in a trustee for the sole and separate use, support and maintenance of the wife and her family, the wife may, during coverture, create a charge upon the property, which may be enforced by a bill filed after her death, and by a sale of the entire property, if necessary, under a decree of the court.

3. The wife's children are not necessary parties to a bill, filed after her death, to subject personal property settled under the provisions of this act to the payment of a charge upon it created by her during coverture.

4. When a note under seal is executed by husband and wife, and is transferred for valuable consideration by delivery merely, the transferror and transferree may join in a bill to enforce its payment out of the wife's separate estate upon which it is a charge.

APPEAL from the Chancery Court of Dallas.
Heard before the Hon. JAMES B. CLARK.

THIS bill was filed in April, 1852, by Daniel Buck and S. D. Hale against the appellant, as the administrator of Mrs. Margaret O. Blevins, deceased. It alleges that in March, 1846, Mrs. Blevins, who was then the wife of John Blevins, filed her bill in the Chancery Court at Huntsville against her husband and the administrators of John Connally, deceased, who was her father; that said bill was filed under the provisions of the act of February 4, 1846, entitled "an act to protect the rights of married women," and its object was, to have settled upon said complainant, for her sole and separate use and benefit, her distributive share of her father's estate, which was then in the hands of his administrators, his estate not having been settled; that a decree was afterwards rendered in said suit in favor of complainant, "the legal effect of which decree was, as complainants are advised, to settle

the distributive share of said Margaret O. Blevins in her father's estate to her sole and separate use, and as her sole and separate estate"; that under and by virtue of said decree Mrs. Blevins received a number of slaves, and other property of great value ; that after she had come into the possession of this property, she and her said husband executed their promissory note, under seal, for $1345, to complainant Buck, who afterwards sold and transferred the same to his co-complainant Hale ; that the principal ground upon which said bill was filed by Mrs. Blevins, and said decree thereon rendered by the chancellor, was the insolvency of said John Blevins ; that he continued insolvent from that time until his death, which occurred in the spring of the year 1851, and was insolvent at the time he signed said note with his wife ; "that the legal effect of said writing obligatory was, to bind the said separate estate of the said Margaret O. Blevins for its payment, and complainants aver that said separate estate was and is liable for its payment. The bill further alleges, that Mrs. Blevins died in September, 1849, intestate, leaving several children, and that the defendant has been duly appointed administrator of her estate.

A transcript of the proceedings had in said suit in the Chancery Court at Huntsville, on the bill filed by Mrs. Blevins, is made an exhibit to the bill. The decree in that suit is in the following words : "It is ordered, adjudged, and decreed, that the share of Margaret O. Blevins in the estate of her father, John Connally, deceased, be, and the same is hereby vested in Rodah Horton, as trustee, for her sole and separate use and support, and the support and maintenance of her family ; and that the administrators of said estate now acting, and all others who may be hereafter appointed, be enjoined and restrained from paying over such portion, or any part thereof, when ascertained, to any other person whatsoever."

The trustee named in the decree having died, James W. McClung was afterwards appointed trustee in his stead by a decree of said Chancery Court at Huntsville ; and he also having departed this life before the filing of this bill, his executors were made defendants, and decrees *pro confesso* were taken against them.

The administrator of Mrs. Blevins answered the bill, admitting all its material allegations, but denying that said promissory note created any charge on her separate estate; and he demurred to the bill for want of equity.

The chancellor decreed in favor of the complainants, and overruled the demurrer to the bill; and his decree is now assigned for error.

WM. M. MURPHY and THOS. J. JUDGE, for appellant:

1. As to the question of jurisdiction : The bill states that Mrs. Blevins, in her lifetime, held the property now in the defendant's hands as her sole and separate estate; that she is dead, and that defendant is her administrator; and that her husband and the trustee are both dead. Upon these facts, the defendant should have been sued at common law, and equity has no jurisdiction.—Vance v. Wells & Co., 8 Ala. 399; Lee v. Muggeridge, 5 Taunt. 37.

2. Buck should not have been made a party complainant. If Hale is a *bona fide* assignee, and the assignment was absolute, as stated in the bill, both of them are not entitled to a decree.—Wilkins v. Judge, 14 Ala. 135; Hardeman v. Sims, 3 *ib.* 747; Story's Eq. Pl. § 392; Clarkson v. DePeyster, 3 Paige 336; 2 Sim. R. 237; Trecothick v. Austin, 4 Mason's R. 16; Field v. Maghee, 5 *ib.* 539; Sadler v. Houston, 4 Port. 208.

3. The separate property, secured to Mrs. Blevins by the decree of the Chancery Court at Huntsville, was for the support and maintenance of her children and family as well as herself, and therefore was not subject to her separate contracts. The interest of the mother and her children, being collective, cannot be divested.—Inge v. Forrester, 6 Ala. 418; Fellows, Wadsworth & Co. v. Tann, 9 *ib.* 999. Mrs. Blevins could not charge this property with liabilities contracted by her as the surety of her husband. She held the property for a particular purpose—not only for her own support, but equally "for the support and maintenance of her family." This is the language of the statute, and also of the decree. The trustee holds for distinct purposes, equally imposing. The words "sole and separate use" are used in the statute to exclude the husband's marital rights; but there is a common

usufructuary interest for her and her family. The principle on which the wife charges her separate estate, is, that she has the same control over it that she would have if she were sole— that is, an absolute control. But under this statute, as the chancellor admits in his decree, she has not the right of absolute disposition.—Spear v. Walkley, 10 Ala. 328; Rugely v. Robinson, *ib.* 702.

4. The act of 1846 settles the property upon the wife and children in precisely the same manner that a decree in chancery would have settled it upon them, if a bill had been filed for that purpose; and the act provides, in case of intestacy, that the property shall descend in precisely the same manner in which it would have descended if it had been settled upon them by a decree in equity—that is, the separate and several interest of each to the next of kin of each. The act, then, being cumulative merely, the children have the same interest vested in them by it that would have vested by bill. That interest is a vested right, unless the wife expressly dissents from their taking anything; and here, the wife, taking under the act, has not dissented. The children, therefore, have a vested right, which cannot be appropriated to their mother's debts: her interest only can be thus subjected, by a proper proceeding for that purpose; and when their interest is to be ascertained and severed, or affected in any way, they must be parties to the proceeding.—2 Story's Eq. § 1417, and authorities cited in note 1, p. 280; Murray v. Elibank, 13 Ves. 1; Munford v. Murray, 1 Paige 620; 1 White & Tudor's Lead. Cas. in Eq., p. 387, and authorities cited.

5. The statute was affirmative and cumulative, and did not change or propose to change the previous laws, except to provide a cheaper and more expeditious remedy for the wife and children; and it certainly ought not to be held to restrict their privileges, or the existing kindness of equity to them.— Smith's Com. on Statutes, pp. 771-2.

6. Statutes enacted at the same session of the Legislature, and on the same subject, ought to be taken *in pari materia*, and should receive a construction, if possible, which will give effect to each.—Smith's Com. 755. The act " to protect the rights of married women" was approved the 4th of February, 1846, and the act "for the relief of married women" was

passed on the 31st of January, 1846; and this latter act gives a child the right to file a bill.—Pamph. Acts 1845-6, pp. 24-5.

7. Mrs. Blevins had no power, during her lifetime, to sell or mortgage the property : the only power of disposition she had over it was to dispose of it by will. When a statute gives a new power, and at the same time provides the means of executing it, those who claim the power can exercise it in no other way.—Smith's Com. 777. That she could not have conveyed by deed, see 1 Story's Eq. § 97 ; Montgomery v. Agricultural Bank, 10 Sm. & Mar. 575; 9 *ib.* 435.

WM. M. BYRD, *contra:*

The decree of the chancellor is correct, and the opinion written by him is clear and conclusive upon the merits of this cause.

1. The first and main point taken by the appellant is, that our remedy is ample and complete at law. We reply, that the bond of a *feme covert* is void at law, and can only be enforced in equity, on the ground that she had a separate estate at the time of the execution of the bond, which in equity is chargeable with the payment of the same.—Forrest v. Robinson, 4 Port. 44; *ib.* 208 ; 2 Bright on H. & W. 249 to 254 ; Vance v. Wells, 8 Ala. 399.

2. The chancellor properly held, that the property acquired and settled on appellant's intestate, by the decree of the Chancery Court of Madison county in 1846, was such an estate vested in her as would be liable in equity to the payment of her bond contracts. The act of 1846, relied on by the appellant to defeat this cause, merely enlarges the jurisdiction of the Court of Chancery, and it does not, nor does the decree of the Chancery Court of 1846, vest any title to the *corpus* of the property in the "family" or children of Mrs. Blevins.— Pamph. Acts of 1845-6, p. 23 ; 2 Bright on H. & W. 220 to 241; *ib.* 249 to 254; Story's Eq. § 1390 to 1394, 1401; Forrest v. Robinson, 4 Por. 44; Sadler v. Houston, *ib.* 208; Vance v. Wells & Co., 8 Ala. 399 ; McCroan v. Pope, 17 *ib.* 612; Lee v. Muggeridge, 5 Taunt. 37.

3. If the second point is sustained, then it follows that the children of Mrs. Blevins are not necessary parties to the bill. If the children had any vested interest in the property, it was

only the right to the profits for maintenance and support during the life of the mother; for, at her death, she had the right to dispose of it by will. But if she had any separate interest in the property from her husband, she became liable in equity to pay said bond.—17 Ala. 612.

4. Hale and Buck were proper parties complainant. The assignor of a bond, though not a necessary party, may be made a party to the bill, either complainant or defendant.— Story's Eq. Pl. § 153-4; Daniel's Ch. Pr. 243 to 251; Field v. Maghee, 5 Paige 539; 6 *ib.* 598.

RICE, J.—The equity of the wife to a settlement out of her choses in action and equitable interests, was a right well known in this State, at and before the passage of the act of February 4th, 1846, entitled "an act to protect the rights of married women."

By the first section of that act it is provided, "that in all cases where a married woman may be entitled to a legacy, or to a distributive share of the estate of a deceased person, or to any other chose in action, not reduced to possession, she may, by filing a bill in chancery, have such legacy, distributive share, or choses in action, vested in a trustee for her sole and separate use and support, and for the support and maintenance of her family, if it shall be made to appear to the chancellor that the same would probably be lost to her, if permitted to go into the hands of her husband, either from his insolvency, intemperance, or improvidence; and in like manner, if she has an interest in lands belonging to the estate of a deceased person, either by descent or devise, the same may be secured for the foregoing purposes, by filing a bill pursuant to the provisions of this act, at any time before a division of such lands shall have been made."

By the second section, the proceedings under the act are prescribed.

By the only other section it is provided, "that such married woman shall have a right to dispose of any such property, real or personal, by will; and in case of her death, without having made such disposition, the same shall be divided and distributed as in other cases of intestacy."

The equity of the wife, as it existed at and before the pass-

age of the act above cited, did not authorize the court to require the husband to settle the whole of her choses in action and equitable interests upon her and her children, but a reasonable proportion of them only.—1 Bright on Husband and Wife, p. 240.

Her children had no equity, in their own right, which could be asserted against her wishes, or in opposition to her rights. She had the right to waive her equity, even after the institution of her suit, at any time before an order or a decree; and if she did waive it, her children's right was thereby defeated, for their right was at her disposal until an order or a decree. 1 Bright on H. & W., pp. 242 to 244; 2 Story's Eq. Jurisp., §§ 1402 to 1419.

It is obvious, that the act of 1846 conferred upon the wife the right, in all cases embraced by its provisions, to exclude her husband from, and secure to herself for the purposes therein mentioned, all her choses in action, legacies, distributive shares, and equitable interests, real and personal, not reduced to possession. This right was generally, if not universally, more valuable to her than her equity to a settlement. But it is evidently inconsistent with that equity; for she could not take *the whole* under the act of 1846, without thereby destroying her equity to a settlement out of it.

Our opinion is, that the intention of the act was not, by mere force of its provisions, without any act on the part of the wife, to destroy her equity to a settlement as it then existed; but the intention was, to tender to her by its provisions what was supposed to be a more valuable right, and to leave it to *her election* to assert her equity to a settlement without regard to the act, or to avail herself of the right tendered by the act.

This construction comports with the title of the act itself, and is in accordance with the spirit of our legislation in relation to married women.

Her election, when made and consummated by a final decree, would not only conclude her, but her children also; for their right was dependent upon her and her acts, as above shown.

In the present case, the wife made her election to take the benefit of the act of 1846, and accordingly obtained the property under its provisions. Hence, it is clear, that the pro-

visions of that act became the law of that property, both as to herself and her children.

Under the provisions of that act, and her bill filed in pursuance thereof, the decree of the chancellor vested the property in a trustee, *for her sole and separate use and support, and for the support and maintenance* of her family; and the act gave *her* the right to dispose of the property by will, and provides, that "in case of her death, without having made such disposition, the same shall be divided and distributed as in other cases of intestacy."

Whether, *during the life* of the wife, the *property* could have been sold to satisfy a charge created upon it by her, after the decree had vested it in the trustee as aforesaid, we do not decide, because it is unnecessary to decide that question. But we have no hesitation in holding, that after said decree had been made, she could, during her coverture, create a charge upon said property, and that such charge can be enforced by a bill filed *after her death*, and by a sale of the entire property, if necessary to pay off such charge, under a decree made under such bill.

This conclusion seems to us to be inevitable from the phraseology of the act of 1846, and the observance of the following established principles, to-wit: 1st, that where property has been settled upon a married woman to her separate use, she is to be deemed in a court of equity as having all the power of a *feme sole* over it, except to the extent that her power may have been restrained, expressly or by clear implication, by the instrument creating such separate estate, or by statute; 2d, that she may charge such separate estate for the payment of her husband's debts, by an agreement freely and fairly entered into, unless restrained as aforesaid.—Bradford v. Greenway, 17 Ala. 797; McCroan v. Pope, *ib.* 612; Collins v. Rudolph, 19 *ib.* 616; Collins v. Lavenberg, *ib.* 682; Ozley v. Ikelheimer, at the present term; 2 Story's Equity Jurisp. § 1398.

Conceding that, when property is settled upon a trustee for the sole and separate use and support of a married woman, and for the support and maintenance of her family, under the provisions of the act of 1846, she and her family were to have *the use* of the property as a joint fund *until her death*, yet it is

clear, that by force of the provisions of the third section of the act, this right of her family ceases at her death ; and after her death, no member of her family can take any interest in the property, except as her legatees, devisees, or distributees. And as, after her death, they can only take as her legatees, devisees, or distributees, they are estopped from saying that it is not her property.

To a bill filed after her death, to subject personal property settled under the aforesaid act to a charge upon it, created by her during her coverture, her children are not necessary parties. The administrator of an intestate, in such a case, represents the distributees as to the personalty.

When a note, under seal, is executed by husband and wife, and is transferred for valuable consideration by the obligee to another, without any writing, and by delivery merely, the transferror and transferree may join as complainants in a bill to enforce its payment out of the separate estate of the wife, upon which it is a charge.—McLane v. Riddle, 19 Ala. 180.

There is no error in the proceedings of the Chancery Court in this cause, of which the appellant can complain, and its decree is affirmed.