## BOOKER vs. BOOKER'S ADM'R.

[BILL IN EQUITY FOR SPECIFIC PERFORMANCE OF CONTRACT.]

1. *Construction of ante-nuptial contract.*—An ante-nuptial contract, securing to the wife's separate use the property then owned by her, together with that which she might afterwards receive or acquire, with power "to give, grant and dispose of her separate estate, as she shall think proper and fit, by will or otherwise ;" and then conveying the property to a trustee, in trust that the wife shall have the use and benefit of the property, if she shall require it, "during her natural life-time," and, in the contingency of her dying without a will, that the property shall be divided equally among her children,—does not restrict the interest of the wife to a life estate, with a power of disposition by will.

2. *Modification of ante-nuptial contract.*—Husband and wife may, by subsequent agreement founded on sufficient consideration, modify an ante-nuptial contract, containing a stipulation on the part of the husband that the persons

to whom the wife might bequeath her property might possess and enjoy it ; and an agreement between them, *to the effect that the husband should possess her land during his life, in consideration of valuable improvements thereon erected by him, is a modification, pro tanto, of the ante-nuptial contract.*

3. *Validity of post-nuptial contract.*—A *feme covert*, having a separate estate secured by ante-nuptial settlement, with absolute power of disposition over it, may enter into a contract with her husband, to the effect that he should possess the land during his life, in consideration of valuable improvements thereon to be erected by him.

APPEAL from the Chancery Court of Perry.
Heard before the Hon. JAMES B. CLARK.

THIS bill was filed by the appellant, against the administrator with the will annexed and the devisees of his deceased wife, to enforce the specific execution of a parol contract, by which Mrs. Booker agreed that her husband, in consideration of certain valuable improvements to be by him erected on a tract of land belonging to her separate estate, "should have and enjoy" the land and improvements during his life. The land was conveyed to Mrs. Booker by her father and mother, in June, 1848, and became a part of her separate estate by virtue of an ante-nuptial contract between her and her husband, which was in these words :

"This indenture, made and entered into this 19th November, 1845, between Richard M. Booker, of the first part, Pernecy Motes, of the second part, and James McLemore, of the third part, (all of the county of Perry and State of Alabama,) witnesseth, that whereas a marriage is shortly intended to be solemnized between the said Richard M. Booker and the said Pernecy Motes ; and whereas the said Pernecy is possessed of and entitled to, by inheritance or otherwise, certain property, consisting of four beds and furniture, together with other household furniture, and a debt owing to her from one Albert G. Hudson of $500; and the said Richard having agreed, that if the said marriage shall take effect, then, notwithstanding the same, he, his executors, heirs and assigns, shall not and will not have any right or title to any part of the said property which said Pernecy is or may be possessed of or

entitled to in any manner whatever, but that the same shall remain in, and be the separate property and estate of her, the said Pernecy :. Now this indenture witnesseth, that for the purpose of making the said agreement effectual, and reserving the said property to the use and benefit of the said Pernecy and the children of her body, so that the same shall not be in the power, or at the disposal of the said Richard, he, the said Richard, for himself, his executors, and administrators, doth covenant to and with the said James McLemore, his heirs, executors and administrators, by these presents, that notwithstanding the said intended marriage shall take effect, all of the estate and property of the said Pernecy shall be recognized and taken as a distinct and separate estate of and from the estate of the said Richard, and be in no wise subject or liable to his contracts, or the payment ot his debts, and the interest or profits hereafter deriving from said property shall be enjoyed and disposed of in such manner, and for such purposes, as the said Pernecy shall direct. And the said Richard, for himself, his heirs, executors, administrators and assigns, doth agree to and with the said James McLemore, in manner following, to-wit: that if the said intended marriage shall take effect, he, the said Richard, shall and will permit and suffer the said Pernecy to give, grant and dispose of her separate estate, as she shall think proper and fit, by will or otherwise as aforesaid, and will permit any such will hereafter made by the said Pernecy to be duly proved by the executors of said will therein named, and proper to be taken (?) as usual ; and that the said person or persons to whom the said Pernecy shall give, dispose, or otherwise, (?) shall and may quietly and peaceably use, possess and enjoy the same according to the true meaning of said bequest or gift, without any denial or interference of him, the said Richard, his heirs, executors, or administrators. And the said Pernecy, in consideration of one dollar to her in hand paid, and for the consideration and purposes above mentioned, doth hereby sell, transfer, convey and confirm unto the said James McLemore, his heirs and assigns, all the right, title, claim and interest of her, the said Pernecy, in and to the

effects and property which she now is or may hereafter become entitled to, from the estate of her father or any one else, and all property of every description which she is or may be entitled to by inheritance or otherwise whatsoever; in trust, nevertheless, that the said Pernecy is to have the use and benefit of the said property, if she should require it, during her natural life-time; and should she, the said Pernecy, die without a will, then, and in that event, the property is to be equally divided between all of the children of her body that she has at this time. Witness our hands and seals," &c.

The chancellor dismissed the bill for want of equity, and his decree is now assigned as error.

J. R. JOHN, for the appellant.

WM. M. BROOKS, contra.

WALKER, J.—The question to be decided by us is, whether or not the complainant's bill contains equity. The object of the bill is the specific execution of an agreement by complainant's wife, that "he should have and enjoy" a certain tract of land of her separate estate, with the improvements on it, during his natural life, in consideration that he would improve it in a certain manner. The complainant made the improvements, and possessed the land during his wife's life-time. His wife being dead, he wishes the contract for the enjoyment of the land during his life-time enforced against her representative and devisees. The land was conveyed by way of gift to the wife during the coverture; but an ante-nuptial contract between the complainant and his wife creates a separate estate in property which the wife might afterwards receive, as well as in that which she then had. It is contended that, by the ante-nuptial contract, the wife's interest is restricted to a life estate, with the power to convey by will; and that, therefore, she could make no transfer to her husband, which would be operative beyond the period of her life.

The ante-nuptial contract reserves to Mrs. Booker the right to give, grant and dispose of her separate estate, as

she might think proper and fit, by will or otherwise. If the ante-nuptial contract in words limited Mrs. Booker's right to a life estate, the question left open in the late case of Weathers v. Patterson, whether a general power of disposition enlarges a life estate into a fee, would arise. But the right of Mrs. Booker is not so expressly limited. By the ante-nuptial contract, the separate estate is first declared; then the unlimited power of disposition is secured; and then the intended wife conveys to a trustee, upon the trust that she should have the use and benefit of the property, if she should require it, *during her natural life-time*, and, in the contingency of her dying without a will, that the property should be equally divided among the children which she then had. By giving the clause which reserves the use and benefit of the property to Mrs. B. during her natural life-time the effect of restricting the duration of her estate to the period of her natural life, we should do violence to that which gives to her an unlimited power to give, grant and dispose of the separate estate, by will or otherwise. By considering the former as simply securing a right to exact from the trustee the actual use of the property and the benefit of such use during life—as limiting the power of the trustee, and defining her right as against the trustee, in the use and benefit derivable from such use, and not as restricting the duration of the estate, we do no violence to the natural import of the language, and we reconcile the two clauses. We decide, therefore, that Mrs. Booker had an unlimited power of disposition, and that there is no express estate for life created. It follows, that Mrs. B. had an absolute estate in the property, and had the right to invest the complainant with an interest continuing beyond her death.—Flinn v. Davis, 18 Ala. Rep. 132.

2. The complainant stipulates, that the persons to whom his wife might bequeath the property, should possess and enjoy it. But the contract, in that respect, was susceptible of modification or change by the complainant and his wife, for a fair and valuable consideration.—Wallis v. Long, 16 Ala. 738. An agreement between the husband and wife, that the husband should possess the land during

his life, would effect a modification, *pro tanto*, of the ante-nuptial stipulation that the wife might bequeath the property, and that the objects of her bounty should enjoy it.

[3.] A married woman is in equity considered a *feme sole* as to her separate estate, and, having the power of disposition over it, might make the contract with her husband in reference to it, which is described in the bill in this case.—2 Bright on H. and W. 223, § 8; 2 Story's Equity, § 1372; Atherly on Marriage Settlements, 161, 162, 163; Andrews v. Andrews, 28 Ala. 432.

What we have said conclusively shows, that the bill, as amended, contained equity; and that is the only question which we think is before us on the appellant's assignment of errors.

The decree of the court below is reversed, and the cause remanded.