GUNTER *vs.* WILLIAMS AND WIFE.

[BILL IN EQUITY BY PURCHASER AGAINST VENDORS FOR DAMAGES ON ACCOUNT OF BREACH OF COVENANTS OF WARRANTY.]

1. *Deed executed by partner in partnership name.*—A deed, or other instrument under seal, executed by one partner in the partnership name, if subsequently ratified by the other partner, is binding on both from its date; and such subsequent ratification may be by parol, and may be proved by parol.

2. *Competency of vendor or mortgagor, as witness for purchaser or mortgagee.*—Where lands are mortgaged by a debtor for the indemnity of his surety, and are afterwards found to be subject to a former vendor's lien; and the mortgagee, having paid the debt, files a bill in equity against the mortgagor's immediate vendor, to recover damages for a breach of the covenants of warranty running with the land,—the mortgagor, not being bound by any covenants or warranty, is not a necessary party to the bill, and is a competent witness for the mortgagee.

3. *Covenants of warranty running with land.*—The covenants of warranty in a deed for land, in the usual form, run with the land; and an action for a breach may be brought in the name of the assignee.

4. *What constitutes breach of covenants of warranty.*—If the purchaser yields possession to a paramount title, he may maintain an action for a breach of the covenants of warranty in his deed, though there has been no ouster by action at law.

5. *When assignor and assignee may join in bill.*—Where lands are sold under mortgage, and are found to be subject to a former vendor's lien outstanding against the mortgagor's vendor; and thereupon the purchaser at the sale, in consideration of being released from his purchase, conveys by deed, without warranty, to the mortgagee, all his interest in the land, together with all damages resulting to him from the breach of the covenants of warranty running with the land, and all right of action for the same at law or in equity,—he may be joined with the mortgagee, as a nominal plaintiff, in a bill which seeks to enforce the claim for such damages.

6. *Separate estate of wife; how charged.*—A married woman, owning a separate estate secured to her by deed, may bind or charge it by any contract, to the same extent as if she were sole and unmarried; and if she joins with her husband and trustee in the execution of a deed for land, her separate estate is bound by the covenants of warranty.

APPEAL from the Chancery Court of Dallas.

Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed on the 11th May, 1858, by Charles G. Gunter, George T. Gunter, and Wynn B. Gowen, as surviving partner of the late firm of W. B. Gowen & Co., (the two latter suing for the use and benefit of said Charles G. Gunter,) against John D. F. Williams, and Emily, his wife; but the bill was afterwards amended by striking out Gowen's name as a party plaintiff. Its object was to enforce a claim for damages, resulting from an alleged breach of the covenants of warranty contained in a deed for lands, which was executed by said Williams and wife to said W. B. Gowen & Co.; and to subject to its satisfaction property belonging to Mrs. Williams' separate estate, secured to her by ante-nuptial contract. The land was situated in the city of Montgomery, and was sold and conveyed by L. W. Pond, by deed dated the 8th July, 1850, to said John D. F. Williams, "as trustee, in trust for the sole and separate use of the said Emily Williams, under the powers, trusts, and conditions set forth in a deed of marriage-settlement executed between the said John D. F. and Emily Williams before their marriage, and to which George T. Walker, as trustee, was a party, dated the 4th January, 1850, and to which reference" was made as part of the deed; the consideration recited in the deed being the present payment of the sum of sixteen hundred dollars, by the said John D. F. Williams, as trustee for his wife. On the 5th April, 1851, Williams and wife sold and conveyed the land to said W. B. Gowen & Co.; the deed reciting as its consideration the payment of twenty-one hundred and thirty-one dollars, and containing the usual words of conveyance, "grant, bargain, and sell"; the *habendum* clause and covenants being in the following words: "To have and to hold the same to the said parties of the second part, their assigns and heirs forever; and the said parties of the first part do hereby covenant to and with the said parties of the second part to warrant and defend *this* (?) title against the just and lawful claims of all persons whomsoever." On the 18th August, 1851, W. B. Gowen & Co. executed a deed, by which they conveyed said land to Charles G. Gunter, to secure and indemnify him against liability as their surety on a bill of exchange and promis-

sory note, which were payable, respectively, on the 1st November, 1851, and the 15th January, 1852. The mortgage contained no power of sale ; but, on the 7th June, 1852, Lewis B. Pope, who, with said W. B. Gowen, composed the said firm, executed and delivered to said Gunter an instrument under seal, in the partnership name, which, after reciting the execution and purposes of the mortgage, and the fact that it contained no power of sale, authorized said Gunter to sell the premises conveyed, and to apply the proceeds to the payment of the note and bill.

Williams in fact paid only four hundred dollars of the purchase-money due to Pond, and gave his three promissory notes for the balance ; and he and his wife executed a mortgage, or deed of trust on the land, with power of sale, to secure their payment. Gowen & Co. also failed to pay eight hundred dollars of the purchase-money due from them to Williams and wife. Gunter, having paid the promissory note and bill of exchange on which he was bound as surety for Gowen & Co., advertised the land for sale under his mortgage and power of sale ; and it was thereupon agreed between Williams, Gunter, and Gowen Co., that the purchaser at the sale should assume the eight hundred dollars which Gowen & Co. owed to Williams and wife, and should pay it to Pond as soon as Williams and wife paid the balance due on their purchase, thus perfecting the title. This agreement was publicly announced at Gunter's sale, which took place on the 4th November, 1853 ; at which sale, George T. Gunter became the purchaser, at the price of sixty dollars, in addition to the eight hundred dollars assumed to be paid as above stated. On the 1st May, 1854, Thomas Welsh, as administrator with the will annexed of said L. W. Pond, filed his bill in the chancery court at Montgomery, to subject the land to the payment of the notes for the purchase-money given by Williams, under the mortgage executed by Williams and wife. In August, 1857, the chancellor rendered a decree in said cause in favor of the said Welsh, and ordered a sale of the land by the register under the mortgage. The sale was made under the decree in November, 1857, and was confirmed by the chancellor at the ensuing January term, 1858 ; but the price brought at

the sale was not sufficient to discharge the mortgage debt. The register made' a deed to the purchaser, and, as an amendment to the bill in this case alleged, "the land was soon thereafter yielded up by the complainant to the purchaser, and said purchaser took possession of the same under his deed."

George T. Gunter paid the sixty dollars bid by him at the sale under Charles G. Gunter's mortgage, and after the subsequent sale under Pond's mortgage, Williams and wife having failed to pay the balance of the purchase-money due from them to Pond, he demanded to be released from his purchase. Charles G. Gunter accordingly repaid the sixty dollars, and agreed to release him from his purchase; and he thereupon executed to said Chas. G Gunter an instrument under seal, dated the 1st May, 1858, which, after reciting the several conveyances and sales above mentioned, proceeded thus; "In view of the failure of the said John D. F. and Emily Williams to discharge the lien on said lot of land, to said Pond or his administrator, and of the sale of said land on account thereof under the order and decree of said chancery court, I, the said George T. Gunter, have desired the said Charles G. Gunter to refund me the sixty dollars paid by me to him at his said mortgage sale, and to be released from the payment of the eight hundred dollars, which, by the conditions of said sale, the purchaser of said lot was to pay; and now, in consideration of the consent of said Charles G. Gunter to refund me the said sum, and to discharge me from said obligation, I do hereby release and confirm unto the said Charles G. Gunter all the right, title, interest, and claim, which I have in and to said lot of land, acquired under and by virtue of my purchase at said mortgage sale of said lot of land, and the conveyance thereof to me by deed from said Gunter, as trustee and mortgagee, on the 4th November, 1853; and I herein, for the considerations named above, do particularly assign and transfer to said Gunter all the damages sustained by me, and to which by law I am entitled, for the breach of the covenants of warranty in the deed to said land from said J. D. F. and Emily Williams to said Gowen & Co., or of the deed from said Gowen & Co. to said Charles G. Gunter, and

all the right of action, in law or·equity, that I may have in and from the same. In witness whereof," &c.

The prayer of the bill was for an account, or issue at law, to determine the damages resulting from the breach of the covenants of warranty in the defendants' said deed; that Mrs. Williams' separate estate might be subjected to the payment of the sum so ascertained, her husband being insolvent; and for other and further relief according to the nature of the complainants' case.

The defendants demurred to the bill, 1st, for want of equity; 2d, for misjoinder of complainants; 3d, because the bill did not show any breach of the covenants contained in the defendants' deed; 4th, because it did not show that the complainants had sustained any damage from a breach of said covenants; and, 5th, because the facts alleged in the bill did not show that Mrs. Williams created a charge on her separate estate by the covenants in her deed. In passing on the demurrer, the chancellor delivered the following opinion:

CLARK, Ch.—" This cause came before the court at the last term, and was submitted on the demurrer of the defendants, without argument, and then stood over for consideration in vacation. The object of the bill is to charge the separate estate of the wife with the damages which have been sustained by the breach of covenant of warranty, in a deed of conveyance by her and her husband, of certain real estate in the city of Montgomery, to the plaintiff Gowen and another as partners. The demurrer is on several grounds; and from the importance of the case, the counsel on both sides would have been authorized to have argued the questions presented; and certainly ·the court would have been profited by argument. I have considered the last ground of demurrer first—namely, that the facts set forth do not show that Mrs. Williams created by the covenants in the deed a charge upon her separate estate.

" From the allegations of the bill, that the property was secured to the sole and separate use of Mrs. Williams, free from the control and disposition of her husband, it is clear, under the decisions of the supreme court, based upon those

of the English chancery, that she retained all the power and control over her separate property, that she had before the marriage; and it cannot be disputed that, as a single woman, she could have sold and conveyed lands with covenant of warranty as to title, or she could have united with John D. F. Williams, or any one else, in a covenant of warranty of title. Then, if she could have incurred those liabilities while unmarried, what would hinder her from doing so when married? I understand the law to be, that when a married woman, who has a separate estate, executes a bond, or other obligation, or makes any contract, which, if she were single, could be enforced against her at law, a court of equity will infer, without express declaration by her, that she intended to charge her separate estate in equity with its payment or performance; and so strong is the inference, that the court will not permit her to deny, in the absence of fraud or undue influence, that she did intend so to charge. The insolvent condition of the husband, and he stating in the conveyance that he made it as trustee, tends to show that the sale and conveyance of the real estate was that of her separate property. But, as I have already said, this can not be material, because a court of chancery will hold her to the consequences of her act.—See *Collins v. Rudolph*, 19 Ala. 616; *Murray v. Barbee*, 3 Mylne & Keene, 209; *Hulme v. Tenant*, 1 Brown's C. C. 16; *S. C.*, 1 Leading Cases in Eq. 389, and the note thereto; *Bell & Terry v. Keller*, 13 B. Monroe, 384; *Vanderheider and Wife v. Mallory & Hunter*, 1 Comstock, 452; *Yale v. Dedener*, 21 Barbour, 286; and *Boarman v. Groves*, 23 Miss. 280.

"That a married woman, having a separate estate, can charge it with the breach of her covenant in a deed of conveyance, has probably never been decided; but I can see no reason why she cannot, and every reason why she can. If she can make a bond that would be a charge, she can as well make a covenant in a conveyance; and I can have no doubt that this a proper charge against the separate estate of Mrs. Williams, provided there has been a breach of the warranty.—*Falmouth Bridge Co. v. Tillotts*, 16 B. Monroe, 637–642.

"2. I will, therefore, now address myself to the consideration of the ground of demurrer, that the bill fails to show that there has been any breach of the covenants in the deed. It alleges, that Pond, the vendor of the defendants, retained a vendor's lien; and that subsequent to their conveyance to Gowen & Co., and indeed to the sale under the mortgage, that his administrator enforced the lien against the defendants in this suit, and obtained a decree from the Montgomery chancery court, to have the premises sold for its satisfaction, and had such decree executed; and that the lands were purchased by a third person, and the sale confirmed by the court; but it does not allege that the plaintiffs have either been removed from the possession, or submitted to the decree. The decisions of the supreme court—namely, *Dupuy v. Roebuck*, 7 Ala. 484; *Davenport v. Bartlett & Waring*, 9 Ala. 179; and *Griffin v. Reynolds*, 17 Ala. 198—*perhaps* require, that the plaintiffs should have alleged that they were *ousted*, or yielded the possession to the purchaser at the register's sale; but, as they have stated that the equitable lien, which had been reserved, was asserted against the land, the premises sold to satisfy such lien under a decree in chancery, to which the defendants were parties, and such sale confirmed, I have come to the conclusion, that the necessity of an averment of an actual ouster, or yielding to the sale under the decree, could not be essential.—See *Hanson v. Buckner's Devisees*, 4 Dana, 251, 254; and *Martin v. Martin*, 1 Dev. Law Rep. 413.

"3. This being the case, do the plaintiffs, as the demurrer of the defendants in their next ground insists, fail to show that they have sustained any injury? Leaving out of view, as I think I ought, that Charles G. Gunter paid on the mortgage debts over four thousand dollars, there can be no doubt that the defendants were liable to make good at least the consideration expressed in the deed, less the eight hundred dollars, to some one. If Gowen & Co. had continued to hold the premises, unincumbered with the mortgage, until the breach of the covenant by the decree and sale, the liability would have been to them; and when they made the mortgage, whether it is treated as a mere security, or conveyance of the fee upon condition, it can not be less

than an express lien, which could not be discharged but by payment of the mortgage debt. But, when the mortgagee sold under the power, his sale vested the entire interest, both of himself and of the mortgagors, in the purchaser. This sale was as effective, in the absence of fraud, to divest the title out of the mortgagee and mortgagors, and vest the same in the purchaser, as a sale under a decree of a court of chancery would.—*Kinsly v. Ames*, 2 Metcalf, 29; *Wilson v. Troup*, 2 Cowen, 193, 230.

"This being the case, it follows that the entire interest, whatever it was, in the lands, with the covenants which run with the land, embraced in the conveyance of the defendants to Gowen & Co., vested in the purchaser at the mortgagee's sale. That sale was an assignment by the mortgagors, through their agent or trustee, the mortgagee, to the purchaser, of the unbroken covenant of warranty made by the defendants to them, and authorized him, or his assignee, to sue for and recover the damages thereon, if afterwards broken.—*White v. Whiting*, 3 Metcalf, 8; *Tufts v. Adams*, 8 Pick. 547; *McCrady v. Brisbend*, 1 Nott & McCord, 104. See, also, *Claunch v. Allen*, 12 Ala. 159.

"That covenants running with the land may be sued on, when broken, by the assignee of the lands, was decided as far back at least as *Spencer's case*, (5 Coke, 16;) and it has been recognized and affirmed by the supreme court of almost every State in the Union.—See 1 Smith's Leading Cases, (ed. 1855,) 115,' &c.; *Watley v. Munford*, 5 Cowen, 137; and *Lot v. Parish*, 1 Littell, 394. Nor is it necessary that the assignee should be one with warranty.—*Cummins v. Kennedy*, 3 Littell, 118; *Beddoe's Executor v. Wadsworth*, 21 Wend. 120.

"If, then, George T. Gunter, at the mortgagee's sale, purchased and paid sixty dollars, and received a deed from the mortgagee, and afterwards lost the land by Pond's superior lien, he sustained damages to at least the amount of sixty dollars. But I apprehend, if he, under the sale by the mortgagee, became the assignee of the covenant of warranty, he would not be restricted in his recovery to the amount of money he paid for the land; but would be entitled to recover whatever his assignor could have

Gunter v. Williams and Wife.

recovered, had no such mortgage sale been made. It is, however, not necessary to determine, what shall be the extent of the relief. It is sufficient to say, that if he has lost sixty dollars, to that extent he has been injured, and can not be deprived of relief.

"4. To return, then, to the question of misjoinder of plaintiffs. To authorize a party to be made a plaintiff, he must have some right to a decree in his favor, or be liable in some way to indemnify some one else, who is associated with him, or be possessed of the legal title, while some other plaintiff has the equitable.—See *Moore v. Moore,* 17 Ala. 631; and *Williams v. Judge,* 14 Ala. 135. Apply this rule to the plaintiff Gowen. The sale of the mortgagee divested all interest out of him, both legal and equitable, in both the lot of land and the covenants running therewith; and as his mortgage conveyance to Chas. G. Gunter was without covenants, there was no liability upon him to indemnify the purchaser at the mortgagee's sale, and, consequently, there did not remain a *scintilla juris* in him, and there was, therefore, no ground to make him a party. If there had remained a spark of right or liability, he would have been a proper party.—*Keith v. Day,* 1 Ver. 660, 671; 8 Cowen, 201; 1 Smith's Leading Cases, 164.

"5. But I apprehend the position of the Gunters is quite different. George T. Gunter could have filed a bill, as soon as he was deprived of the premises by the decree of the court of chancery, and could have at least had a decree for the sixty dollars paid by him; but this right to relief had then ceased to be a covenant running with the land, and became a *mere chose in action,* and assignable as such.— *Beddoe v. Wadsworth,* 21 Wend. 120, 123; 1 Smith's Lead. Cases, 163. This being the case, without considering whether the effect of the deed of release and assignment from him to Charles G. Gunter was to vest the latter with the legal title or not, or but the transfer of an equitable interest under the English practice, (as laid down in Daniell's Ch. Pr. 248,) and the decision of the supreme court in *Blevins v. Buck,* (26 Ala. 292,) I shall hold that they are both proper parties; and therefore the demurrer for the misjoinder of these two plaintiffs cannot be allowed. The

case must, however, stand over for an amendment of the bill by striking out the name of Gowen. And here I will say, it might be well for the solicitors for the plaintiffs, if their case will justify it, to amend their bill by stating that they yielded to the title of the purchaser at the register's sale."

The bill having been amended, by striking out the name of Gowen as a plaintiff, and adding an allegation of the surrender of possession, the demurrer was overruled. A joint answer was afterwards filed by the defendants, admitting the material allegations of the bill as to the several sales and conveyances; but they denied that Mrs. Williams' deed created, or was intended to create, any charge on her separate estate; or that there had been any breach of the covenants in the deed; or that the complainants had surrendered the possession of the land to the purchaser at the register's sale; and they set up some other matters, which require no special notice.

On final hearing, on pleadings and proof, the chancellor dismissed the bill, on the ground that the complainants had failed to prove the execution of the power of sale from W. B. Gowen & Co. to Charles G. Gunter; and his decree is now assigned as error.

ELMORE, KEYES & GUNTER, and JONA. HARALSON, for appellant.

PETTUS & DAWSON, contra.

A. J. WALKER, C. J.—Proof of the execution of the power of sale given by W. B. Gowen & Co. is an indispensable pre-requisite to a decree for the complainants. The chancellor, deciding that there was an entire want of such proof, dismissed the complainants' bill. We must, at the threshold of this case, ascertain whether the chancellor rightly adjudged that the execution of such instrument was not proved.

W. B. Gowen, the complainants' witness, was asked by the defendants in their second cross-interrogatory, "who signed the firm name to the power of sale referred to in the 7th interrogatory?" The 7th interrogatory refers to

Gunter v. Williams and Wife.

the power of sale given to the mortgagee, after the execution of the mortgage, authorizing him to sell under the mortgage. The witness answers this 2d cross-interrogatory thus: "I did not see *it* signed, but, upon examination, I find that the *mortgage*, which includes the power of sale, was executed by L. B. Pope; that the signature W. B. Gowen & Co. is in the handwriting of L. B. Pope." If this testimony were all the evidence, it would at least be doubtful whether the evidence satisfactorily identified the power of sale, and proved its execution; for there is no power of sale included in the mortgage, and the mortgage is not signed W. B. Gowen & Co., and the mortgage and power of sale are distinct instruments. The answer to the first rebutting interrogatory fully solves the difficulty of comprehending the answer to the 2d cross-interrogatory, by showing that the witness denominated the power of sale a mortgage, and spoke of it as a mortgage including a power of sale. In it he states, that he had seen a *mortgage*, purporting to have been executed by W. B. Gowen & Co., to C. G. Gunter, for the land in question; that he saw it in the city of Montgomery, on the day of his examination; that it was attached to interrogatories propounded to H. W. Watson and others, and in the possession of D. H. Workman, the commissioner. It appears from the testimony, that the deposition of H. W. Watson and others was taken, two days before the deposition of W. B. Gowen, in the city of Montgomery; that D. H. Workman was the commissioner, who took both depositions; that the power of sale, purporting to be executed by W. B. Gowen & Co., was attached to the interrogatories to H. W. Watson and others, and that the mortgage was not. From this it is obvious, that the witness, in answer to the 2d cross-interrogatory, spoke of the power of sale as a mortgage, and proves the signature of W. B. Gowen & Co. to be in the handwriting of L. B. Pope. The ground, therefore, upon which the chancellor dismissed the bill, is not sustained.

1. It is insisted, on the part of the appellees, the defendants below, that the power of sale does not bind W. B. Gowen, the partner who did not participate in the execution of it, but is only obligatory upon Pope, the partner who

subscribed the partnership name. In commercial partnerships, a subsequent ratification by parol, of a sealed instrument executed by one partner in the partnership name, may be proved by verbal evidence, and retroacts and binds the ratifying partner from the date of the instrument.—*Herbert v. Hanrick,* 16 Ala. 581–589. The ratification by Gowen was very distinctly and clearly proved by Wm. A. Gunter; but the chancellor erroneously excluded the evidence, on the motion of the defendants. This evidence being admitted, and considered in connection with the evidence of W. B. Gowen, there can be no doubt that Gowen was as much bound by the power of sale, as if he had himself executed it.

2. W. B. Gowen had no interest in the suit, not being bound by any warranty or covenants; and he was, therefore, a competent witness, and not a necessary party.

3. The covenant of Williams and wife ran with the land, and suit could be brought upon the same in the name of the assignee, holding under their grantee.—*Claunch v. Allen,* 12 Ala. 159. The complainant, C. G. Gunter, is such an assignee. The written instrument of G. T. Gunter transferred all right and title derived by the purchase at the mortgage sale to C. G. Gunter, and thus constituted the latter the assignee of the covenants running with the land.

4. The complainant, C. G. Gunter, yielded the possession to a paramount title; and that is sufficient to sustain an action upon the covenant of warranty, notwithstanding there may have been no ouster by action at law.—*Dupuy v. Roebuck,* 7 Ala. 484; *Davenport v. Bartlett & Waring,* 9 Ala. 179; *Claunch v. Allen,* 12 Ala. 159; *Griffin v. Reynolds,* 17 Ala. 198.

5. The principle settled in *Blevins v. Buck,* (26 Ala. 292,) and *Plowman & McLane v. Riddle,* (14 Ala. 169,) justifies the making of George T. Gunter a co-complainant with his assignee, the beneficial plaintiff, Charles G. Gunter.—See, also, *McLane & Plowman v. Riddle & Burt,* 19 Ala. 180.

6. We can not assent to the proposition, that Mrs. Williams has not bound her separate estate by joining in the deed to Gowen & Co. A married woman is regarded in equity, so far as her separate estate, created by contract, is

concerned, as a *feme sole*, and she may bind her separate estate by any contract by which she could bind herself if sole and unmarried.—*Faulk v. Wolfe & Gillespie*, 34 Ala. 541; *Roper v. Roper*, 29 Ala. 247; *Booker v. Booker*, 32 Ala. 473; *Drake and Wife v. Glover*, 30 Ala. 382. The power of the wife to bind her separate estate by the covenants of a deed is evidently asserted in the general principle which we have announced above; and we know of no case, or doctrine, upon which such power could be excepted from the general rule. We must, therefore, decide that the separate estate of Mrs. Williams was bound by the covenants of the deed to W. B. Gowen & Co., and must be subjected to the satisfaction of the complainants' damages resulting from the breach of those covenants.

The chancellor erred in dismissing the complainants' bill, and in not granting them relief.

The chancellor, in an able opinion upon a demurrer to the bill, sustains the views expressed by us upon the merits of this case. We refer to his reasoning and collection of authorities in that opinion, in support of our conclusions.

Reversed and remanded.

BYRD, J., not sitting.