[Radford's Adm'r v. Morris.]

# Radford's Adm'r *v.* Morris.

*Settlement of Accounts of Deceased Guardian, by Administrator.*

1. *Annual or partial settlements; conclusiveness of.*—Annual or partial settlements, by an executor, administrator, or guardian, are, on final settlement, to be presumed to be correct (Code, §§ 2531, 2772); but this principle applies only to settlements made in conformity to law, and not to an *ex-parte* statement of his accounts.

2. *Same.*—An account-current, under oath, filed by a guardian, and ordered to be recorded, but without any other action taken on it by the court or probate judge, is not an annual or partial settlement, nor to be presumed correct on final settlement.

3. *Presumption in favor of judgment.*—In revising a judgment or decree on a disputed question of fact, this court will indulge every reasonable presumption in favor of its correctness, and will not reverse, when the record does not set out all the evidence that was before the primary court, because that which is set out does not affirmatively show its correctness.

APPEAL from the Probate Court of Madison.

In the matter of the final settlement of the accounts of Newton Radford, deceased, as guardian of William T. Morris, by Joseph A. Brown, as administrator of said Radford. William T. Morris, the infant, was the only child of William Morris, whose widow married said Radford when the infant was only two or three years old; and letters of guardianship were thereupon issued to said Radford on the 21st November, 1857. The record does not show when the guardian died, but letters of administration on his estate were granted to said Brown on the 15th January, 1873; and he filed his accounts, for a final settlement of the guardianship, on the 19th February, 1877. In the account as filed by the administrator, he claimed a credit for $324.54, as "balance due on last settlement, November 10, 1861"; and also an allowance of $75 for the "board, clothing and washing" of the infant, during each of the years 1861, 1862, and 1863, and of $125 for each of the subsequent years, from 1864 to 1872, both inclusive; and these items of the account were contested by the ward. The account, or settlement of November, 1861, by which the balance of $324.54 was ascertained, as set out in the bill of exceptions, is in the form of an account-current between the infant and his guardian, in which he is charged $50 for board during each of the years 1857 to 1860, inclusive, and is credited with $20 for "hire of woman Martha and children," the balance of $324.54 being ascertained by another charge

of $112.44 for money paid A. L. Logan. Appended to this account was an affidavit, made and subscribed by the guardian, on the 10th November, 1861, before the probate judge, as to its correctness; and it was indorsed, "Annual settlement, Record No. 31, p. 474." The evidence adduced on the hearing, in reference to this and the other contested items of the account, is thus stated in the bill of exceptions:

"The administrator offered the following evidence to sustain the charges and vouchers in said account. Said Brown testified for himself," after stating the marriage of the guardian with the infant's mother, his care and attention to the infant, and his own intimacy with the family during the time, "that from 1862 to 1865, both inclusive, he thought $75 per year a reasonable charge for board, clothing and washing for the minor, and $125 per year for the years 1866 to 1872, both inclusive; also, that the negro woman Martha and her children, in which property said minor had a one-half interest, were not worth for her services, from the year 1861 to 1865, their board and clothing; and that said Martha had six children, all too small to be of any service. The court, against the objections of the administrator, permitted James H. Scruggs, ex-judge of probate of said county, to testify that, while he was judge of said court, he had a conversation with said guardian when he filed said account for annual settlement in 1861, in which said Radford proposed that he would support the minor for the use of said negro woman (Martha) and her two children; that he assented to this proposition, though he was not inclined to charge board at all; that said account for annual settlement was made out by him as judge of probate, and was sworn to before him, and the balance, as struck by him, amounted to $324.54 in favor of the guardian; that the records of said court were, soon thereafter, sent to a place of safety south of the Tennessee river, fearing that Huntsville would be occupied by Federal troops; but that the balance, as above stated, was ascertained by him, and the account so ascertained was afterwards recorded. The administrator objected to the testimony of said Scruggs, on the ground that said settlement of November 10th, 1861, was *prima facie* correct, and could only be impeached for fraud, arithmetical error, or error in point of law, and that it should be deemed correct until properly assailed; which objection was overruled by the court, because no decree had ever been rendered on the account as filed; but he would receive the account as evidence, and would render his decree upon a view of the account and all the other facts in the case; and the administrator excepted.

"A. L. Logan, witness for said W. T. Morris, testified, that

he was the administrator of the estate of William Morris, deceased, the father of said W. T. Morris, and made a final settlement of his said administration in 1858 ; that the only assets in his hands belonging to said estate, unadministered, was said woman Martha and her two young children ; that the only distributees of said estate were said infant and his mother, then the wife of said Radford; that a balance of $224.88 was found in his favor on said settlement, April 1st, 1858, and he proposed to sell said negroes to satisfy this balance ; and that said Radford, as guardian of said infant, thereupon paid him said balance, to prevent the sale of said negroes. Said witness testified, also, that said negroes were not worth their board and clothing, leaving out their doctor's bills, during the years 1858 to 1862 ; and that said Martha had a child every year, and was growing less valuable for hire. He further testified, that he heard a conversation between said guardian and Scruggs, then probate judge of the county, in which said Radford stated that he thought the services of woman (Martha) would be about equal to the board for the said minor. The administrator objected to that part of the testimony of said witness which recited the conversation between himself and said probate judge, because the parol testimony tended to vary the records of the court, and to impeach the former settlement of said guardian ; which objection was overruled by the court, and the administrator excepted.

"*J. R. Love*, a witness for said W. T. Morris, testified, that he thought the services of said Martha and her children were compensation to the guardian for the board of said minor during the years 1858 to 1865 ; that $6,00 per month was reasonable board, and $8.00 per month was 'big' board, for said minor, during the years 1865 to 1872 ; that during that period he had boarded, for a part of the time, hands at work at the ferry at Whitesburg, at $40 per year ; that board in Huntsville was higher, according to accommodation ; that the board of said minor, while at school in Huntsville, was reasonably worth $125 per year, and that twenty-five per-cent. of that amount would be a fair valuation for his clothing. *J. R. Johnston*, a witness for the administrator, testified, that the board of said minor, while at school in Huntsville, was worth from $120 to $125 per year, during the years 1865 to 1872, inclusive. *Mrs. Eliza Pollard*, the sister of said minor's mother, testified, that said minor boarded with her during the years 1863 and 1865, and in 1871-72, while going to school in Huntsville ; that Radford, as guardian, paid his board for 1871 and 1872 at the rate of $125 per year ; that she made no charge for his board in 1863 and 1865, though said Rad-

ford, as his guardian, placed him to board with her ; that no contract was made for boarding him, but butter, eggs, vegetables, and chickens, were furnished her by Mrs. Radford during these years, and in supplying her with these articles, which at that time were difficult to procure, she was fully paid for the board of said minor ; that the Federal troops occupied Huntsville in 1863–65, and any one was liable to be arrested for passing Confederate money in 1863 ; and that there was little or no currency of any kind in circulation in 1865."

"The court, after examining the account of said administrator as aforesaid, and after hearing the proof in regard thereto, and the arguments of counsel, decided to allow nothing for the board, clothing, or washing for said minor, during the years 1857 to 1865, and allowed $7.00 per month for board for the years 1865 to 1872 ; to which ruling the administrator excepted."

The rulings to which exceptions were reserved, as above stated, and the decree of the court, are now assigned as error.

JNO. J. McDAVID, and JNO. D. WEEDEN, for appellant.

HUMES & GORDON, and IRVINE WHITE, contra.

STONE, J.—Upon the final settlement of a guardian's accounts, the previous annual or partial settlements shall be presumed to be correct, but may be impeached for fraud, or for any arithmetical or other error.—Code of 1876, § 2772. But, to raise these to the dignity of *prima facie* proof, they must be made in conformity to law.—1 Brick. Dig. 971, § 809. *Ex-parte* statements, or [*ex-parte*] allowance of the accounts of an executor or administrator [or guardian], are unauthorized, and are nullities.—*Ib.* 972, § 810. What is claimed as an annual settlement in this case, has scarcely any of the attributes of a settlement. The record shows only an account current, sworn to, filed, and ordered to be recorded. There is even no decree, ascertaining a balance ; and if the judge of probate made any order in regard to it, farther than to order it recorded, the record fails to inform us of it. The judge of probate did not err in ruling that the certified transcript did not show any partial settlement previously made.—*Legatees of Horn v. Grayson*, 7 Por. 270.

One other question is raised : Does the record sufficiently show that the Probate Court erred in the matter of allowance to the guardian for the board of the ward ? We think that, under our various rulings, we are forbidden to hold that the

[Frey v. Thompson's Adm'r.]

court below erred in the conclusions he drew from the testimony. The bill of exceptions sets forth the testimony of several witnesses, *pro* and *con.* If we were informed, or were permitted to infer, that all the evidence given at the trial is before us, we are not prepared to say we would concur with the court below in the conclusions there announced. But, we are forced to draw every reasonable inference in support of that court's correct ruling, which the record does not repel. When it is sought to have this court to review and reverse the finding of a primary court on facts, it is not enough that we are unable to perceive and affirm the correctness of its ruling. That much we presume, until the contrary is shown. To obtain a reversal, the record must affirmatively show error. Applying this principle to this case, we can not know that the Probate Court erred in its conclusions, unless we knew the evidence from which the conclusions were drawn. There may have been much other testimony, not shown in this record; and we must presume there was such testimony, in the absence of a record statement to the contrary. To authorize a reversal of a primary court's findings on fact, the record must affirmatively show that the testimony—all the material testimony—on which it is based, is before us. That, this record fails to do ; and we feel bound to affirm the Probate Court's finding.—1 Brick. Dig. 781, §§ 118, 119, 120 ; *Walker v. Nunnelly*, at the last term ; *Key v. Vaughn*, 15 Ala. 497 ; *Williams v. Gunter*, 28 Ala. 681 ; *Gunter v. Williams*, 40 Ala. 561 ; *Jones v. Jones*, 42 Ala. 218 ; *Ashly v. Martin*, 50 Ala. 537.

Affirmed. This judgment to take effect as of January 23d, 1878.

BRICKELL, C. J., not sitting.