# McKenna *v.* Rowlett.

*Bill in Equity to subject Wife's Equitable Separate Estate to Payment of Note of Husband and Wife.*

1. *Lessee's remedies for reimbursement of repairs expended under lease.* A stipulation in a written lease, that the lessee may apply the accruing rents to the reimbursement of moneys expended by him in necessary repairs, does not take away from him any other remedy to which he may be entitled to recover the moneys thus expended, especially when he has been deprived of that mode of redress by the conduct of the lessor.

2. *Equitable estate of married woman; how charged.*—A promissory note executed by a married woman, jointly with her husband, is a charge on her equitable separate estate, which a court of equity will enforce, when there are no restraints on her power to charge or alienate such estate.

[McKenna v. Rowlett.]

APPEAL from the Chancery Court of Barbour.

Heard before the Hon. N. S. GRAHAM.

The bill in this case was filed on the 14th March, 1878, by Daniel Rowlett, against Thomas McKenna and his wife, Mrs. Martha R. W. McKenna; and sought to subject a house and lot in Eufaula, alleged to belong to Mrs. McKenna, to the payment of a promissory note for $854.37, executed by said McKenna and wife, dated the 30th December, 1875, and payable one day after date, to the order of Rowlett & Labatut, a mercantile partnership of which complainant was a member; and the partnership having been dissolved, he claimed the note as his individual property. The note, which was made an exhibit to the bill, recited that it was given "for repairs to the store-house of the undersigned M. R. W. McKenna in Eufaula, Alabama, and for supplies furnished us for family use." The store-house, with the lot on which it was erected, was bought by said Thomas McKenna, and the title taken in his own name; but it was admitted that the purchase-money paid "belonged to his said wife, and was received from the hire of negroes held by her under the marriage contract between her and her former husband, John P. Booth, and that said Thomas afterwards mortgaged said store-house and lot to his said wife;" and by an ante-nuptial agreement between said McKenna and his wife, dated the 22d December, 1857, which was made an exhibit to the bill, it was declared "that the said Thomas renounces all claim, right, title and interest, in and to all the property, of whatever description, now belonging to the said Martha, or which she may hereafter acquire, or become entitled to, by gift, devise, or otherwise; and hereby covenants and agrees that all said property now by said Martha owned, or to be by her in any manner acquired, together with all the subsequent income, rents and profits, shall, notwithstanding said marriage, be held by the said Martha as her own separate and distinct property, and for her sole and separate use and benefit, not subject to any existing or future debts and liabilities of the said Thomas, and not subject to be sold, conveyed, or disposed of in any manner, or controlled or managed by him," &c.

The store-house and lot were rented by McKenna and wife to Rowlett & Labatut, for the term of one year, commencing on the 1st November, 1875, at an annual rent of $550, payable monthly; and by the terms of the written lease, which was under seal, and signed by all the parties, and a copy of which was made an exhibit to the bill, it was stipulated, "that as said store-house is now in an untenantable condition, and not fit to be occupied as a store, the said parties of the

[McKenna v. Rowlett.]

second part [Rowlett & Labatut] are hereby empowered and expressly authorized to put said store-house, including both stories of the same, in complete and thorough repair, and to apply the monthly rental of said store-house, as fast as it becomes due and payable, in reimbursing them for whatever amount they may have paid in making said repairs, including interest on said amounts from the time they were paid out; and the said parties of the first part are to receive no part of the rent for said store-house, until the said parties of the second part are entirely reimbursed in the amount paid out by them for repairing said store-house, with interest thereon." The bill alleged, " that the larger part of said note was for said repairs on said store-house; that the rent reserved by said contract would nearly, if not entirely, have paid said amount expended by said Rowlett & Labatut for repairs, but said defendants consumed the greater part thereof to pay for family supplies used by them; that early in the year 1877, after complainant had refused to allow said defendants to appropriate the rent of said store-house to pay for family supplies, and insisted that said rent should go to pay him for said repairs, as stipulated by said contract, they refused to allow him to retain the possession of said store-house and lot," and recovered the possession from him in an action of unlawful detainer; and it was further alleged that Thomas McKenna was insolvent. On these facts, the bill prayed that a lien might be declared on the house and lot for the amount due and unpaid on the note, and that the property might be sold, under the decree of the court, for the satisfaction of the debt; or, that an account be taken to ascertain what part of the consideration of the note was for repairs put on the house, as provided by the written contract, and a lien be declared for that amount, and enforced out of the rent of the property, or by a sale of the same, as the court might decree; and for other and further relief, under the general prayer.

A demurrer was filed to the bill, for want of equity, on the ground that the complainant's only remedy, under the stipulations of the lease, was to retain the house and lot until the rents had reimbursed him for the cost of the repairs made, and he had lost this remedy by his own fault; and on the further ground, that the allegations were not sufficient to support it as a bill for specific performance. The demurrer was overruled by the chancellor; and the defendants then filed a joint answer, admitting the execution of the written lease and note, as shown by the exhibits to the bill; but they insisted that the note did not correctly state the amount of their indebtedness to Rowlett & Labatut—that it included exor

bitant and unjust charges on account of repairs, and charges of usurious interest ; and that they were induced to sign the note by the complainant's misrepresentations as to the amount of their indebtedness.  They alleged that, at that time the written lease was entered into," the express understanding and agreement was, that Rowlett & Labatut were to look alone to the rent, or use and occupation of said store, to reimburse them for what defendants might owe them for necessary supplies furnished, and for making repairs under said contract ; and such understanding and agreement was part of said contract, and was intended to be stated therein, and if said contract is not construed as having such legal effect, it fails to express the true intent and meaning of the parties ; " that the complainant himself acted on this construction of the contract, and continued in possession of the premises after the termination of the lease, applying the rents to the payment of his debt, until on or about the 1st February, 1877, when he filed a bill in said Chancery Court to subject the property to the payment of another note which they had executed to him ; and that they then brought an action of unlawful detainer against him, and recovered the possession.

The chancellor sustained the plea of usury, and directed the register, on the statement of the account, to discard all usurious charges ; but he held the complainant entitled to relief, for the amount of his debt, as ascertained by the register ; and on the coming in of the register's report, which was confirmed, he rendered a decree declaring a lien on the house and lot, and ordering it to be sold by the register, if the debt was not paid within ten days.  The defendants jointly appeal, and here assign as error the overruling of the demurrer to the bill, and the final decree.

JAS. L. PUGH for appellant.

G. L. COMER, contra.

STONE, J.—There is much said in this record about the contract of lease, and there is a controversy as to who committed the first breach of its stipulations.  The first breach of the writing (and the writing must control) was the refusal by the appellants to allow the entire accruing rents to be applied to the reimbursment of the moneys expended in repairs by the appellee.  The terms of the lease cut no important figure in this controversy, save as the amount expended in repairs constitutes part consideration of the note sought to be collected.  Neither is there anything in

[Meredith v. Holmes.]

the contention, that, because the writing stipulates that the moneys expended in repairs were to be repaid in the rents, the complainant in this suit (appellee here) is confined to that single resource or remedy, for the recovery of the moneys thus expended. The conduct of appellants has placed that measure of redress out of the power of the appellee. Appellants cannot be heard to complain that appellee does not pursue a remedy, which they, by violating their contract, have rendered impossible.

But there is another view of this case, equally fatal to the position taken by appellants. Mrs. McKenna owned the property sought to be condemned, by a right and title which constituted it her equitable separate estate. While thus owning that property, she executed the note which this suit seeks to collect. The simple fact of the execution of the note, fastened a charge upon the equitable separate estate then owned by her, which a court of chancery will enforce, by decreeing a sale of the property for its payment, if necessary.—*Collins v. Rudolph*, 19 Ala. 616 ; *Cowles v. Morgan*, 34 Ala. 535 ; *Caldwell v. Sawyer*, 30 Ala. 283 ; *Gunter v. Williams*, 40 Ala. 561 ; *Short v. Battle*, 52 Ala. 456. The terms of the contract of lease, by which the rents were to be applied to that debt, although executed before the note was given, must, under the circumstances, be treated as an additional security for the payment of the debt evidenced by the note. This would be the rule, if the note were given by one *sui juris;* and, to the extent of charging her property, a married woman, owning an equitable separate estate, must be regarded as *sui juris.* The chancellor did not err in decreeing relief to complainant.

When this appeal was taken, the reference had not been executed. Hence, any consideration of questions arising in taking the account would be premature.

Affirmed.