35   313
79   250

C. K. BULLARD V. M. E. THOMPSON AND OTHERS.

1. A resident of Texas, being temporarily in New York, there executed his promissory notes, but dated them as at his residence in Texas, and stipulated on their face to pay twelve per cent. interest per annum, which, under the then laws of New York, was illegal if the notes were payable there. No place of payment was designated. *Held*, that from the fact of dating the notes as though made in this State, a strong implication arises that they were to be payable according to the laws of this State, under which the rate of interest was lawful; and this implication is greatly strengthened by the fact that the rate of interest was lawful in this State, but unlawful in New York.

2. A testator provided by his will that all his just debts should be paid; and first, those to his sister and to his uncle. *Held*, that the will takes the debts to the sister and uncle out of the statute of limitations, and obligates their payment by the executrix, provided there are assets for the purpose.

APPEAL from Matagorda. Tried below before the Hon. Geo. W. Smith.

This suit was brought in the year 1855, and tried in the court below at the Spring Term, 1859. It was strongly contested, and the record is quite voluminous. The facts, however, on which the rulings of this court

depend, are few and simple, and are clearly stated in the opinion.

The present decision was made upon a rehearing, and upon able and elaborate arguments of counsel. As the present opinion makes repeated reference to the one delivered by Chief Justice Morrill on the original submission of the cause, the latter document is here introduced as part of this statement of the case.

"The action, by the plaintiff against the defendant as executor, was based upon notes executed on the first of July, 1849, payable at one day, and also upon a will of the debtor, supposed to have been made in June, 1849, containing the clause, 'In the first place I desire that all my just debts be paid, and first those of my sister, Mrs. Mary Ann Richardson, and my uncle, Charles K. Bullard.'

"The debtor and testator died on the fourth of November, 1850, and the will was probated on the twenty-seventh of the same month and year.

"The defense is, that although the notes purported to be made at Matagorda, Texas, the residence of the testator, yet in reality they were made, executed and delivered in New York, and that the same are illegal, because they specify an illegal interest of the State of New York; and secondly, that the action is barred by the act of limitations.

"A jury was waived, and thus we are called upon to adjudicate upon both law and facts.

"We do not deem it necessary to place in opposite scales the testimony introduced by the opposing parties, showing where the note was really executed. It may be true that a contract may be illegal or invalid agreeably to the laws of the place of its execution, and yet be legal and valid if the performance of the contract contemplated a place whose laws were different,

and would not stamp it with invalidity. Admitting, therefore, that the parties to the notes were, at the time of their execution and delivery, in New York, yet, as the notes bore date at Matagorda, Texas, and as the maker of the notes resided there as a merchant, the notes were thus expressly payable there; and being payable in Texas, there is nothing illegal in the contract. (See 2 Parsons on Bills, 320; Smith v. Mead, 3 Conn. 253; 4 Johns. Rep., 485; 8 Johns., 189; 5 Johns., 239; 3 Story, 465; 7 B. Monroe, 575; 9 Missouri, 55; Id., 157; 13 Peters, 65.)

"The next position of the defense is the statute of limitations. As more than four years had elapsed from the maturity of the notes and previous to the institution of the suit, exclusive of the time in which suit could not be brought, from the absence of the party liable, and other causes, the plea of limitation makes a good defense, so far as relates to the notes, and without any reference to the will. This brings us to consider the real question of importance or doubt in the case.

"When the will was made does not distinctly appear, or whether it was before or after the date of the notes. It is evident, however, that the testator was largely indebted upon account current previous to the time the notes were executed, and that on the first of July, 1849, the notes in suit were executed in consideration of this former indebtedness. Whether, therefore, the will was made the month previous to the date of the notes, as is contended by the defendant, or during the June of the next year, as the plaintiff insists, makes no difference, since the debts referred to in either case are the same.

"If the will was made before the indebtedness then existing had become certain in amount by the execution of the promissory notes, these notes may be re-

garded as papers referred to by the will, and be considered a part thereof, and the same may be said if these evidences of indebtedness were of a date anterior to the will. We hence consider that the will is to be construed as if it directed the executor to pay the notes in designated amounts, as they appear.

"This would be the same as a renewal of the notes on the day the will took effect, since on this day it is admitted that these notes were genuine debts, and not affected by the act of limitations, payment or anything destroying in whole or in part their validity. This view of the case disposes of the question. Deducting the time of the absence of the executor from the State, the remaining time, from the probate of the will to the institution of the suit, is less than four years.

"There is another view of this case upon which it is not necessary that we should express our opinion, to decide this case. It is evident that the testator intended, by the provision in his will 'that the debts due his uncle, C. K. Bullard, should be paid,' to mean something. These debts were not to be treated and considered by the executor as ordinary debts, and to be affected by any contingencies that might happen in the settlement of his estate. A sum sufficient to discharge these debts was by the will designated and set apart out of his estate. The plaintiff was a legatee of the testator to the amount of his debts due at the time of the probate of the will, and the suit may be regarded as an action to recover the legacy. Whatever defense the executor can set up at the suit of any other legatee, can be set up in this case, and no other.

"The executor of a will is a trustee of the testator, and holds the property of the estate for the purpose of executing the trust. Therefore, the statute of limitations can have no further or greater application in this

case than in other cases of trust. In 2 Williams on Executors, 1740, the author says: 'It must be observed that, generally speaking, the statute of limitation, 21 Jac. 1, C. 16, does not run against a trust. Accordingly a trust or charge created by will upon the real estate for the payment of debts, prevents the statute from running against such debts as were not barred in the testator's lifetime, though such a trust does not revive a debt on which the statutes had taken effect, before the will came into operation, viz., before the testator's death.'

"We are fully apprised of the difference of the powers of an executor in England and in this State, as regards real estate, and also that the authority just quoted has reference to a 'trust or charge created by will upon the *real* estate,' and that the 'trust or charge by will upon the *personal* estate does not at all prevent the operation of the statute.' It would further seem, from the reasons assigned, that because the 'law vests the personal estate of the deceased in his executors, as a fund for the payment of his debts, and he cannot, by his will, create a special trust for that purpose,' that, if the law should, as in this State, vest both personal and real estate in the executor, for the payment of debts, that the special trust should not prevent the operation of the statute, and that the only effect of the will would be to revive the debt at the time the will was probated.

"The only points necessarily arising for the decision of the case are:

"1. Were the debts valid and subsisting when the will took effect?

"2. Were they such at the institution of the suit?

"These questions being answered affirmatively, the judgment is reversed, and a judgment rendered in this

court for the amounts due by the notes, to be calcula-
ted by the clerk."

*Ballinger & Jack*, for the appellant.

*John W. Harris*, for the appellees.

WALKER, J.—This case was decided at the Galveston
Term, 1870. The opinion was delivered by Chief Jus-
tice Morrill, and is recorded at pages 475, 476, 477 and
478 of Opinion Book. A rehearing was subsequently
granted, and the cause was reargued by counsel for ap-
pellee, and submitted by both parties at the last term
of the court.

We do not feel it incumbent upon us to enter into a
lengthy discussion of the questions raised upon the
record, believing, as we all do, that the case was cor-
rectly decided in the opinion alluded to. We think it
immaterial to determine whether the notes were made
in New York or Texas, or whether the *lex loci* or the
*lex fori* shall govern in construing the contract, or
whether the notes were barred by the statute of limita-
tions of Texas, or not. For we are clearly of the
opinion that Charles A. Bullard, by the following
clause in his will, made it obligatory upon his execu-
trix to pay whatever debts he owed his uncle, Charles
K. Bullard : "In the first place, I desire that all my
just debts be paid, and first those of my sister, Mrs.
Mary Ann Richardson, and my uncle, Charles K. Bul-
lard."

It does not appear from the statement of facts, nor
from any part of the record, that Charles A. Bullard
did not leave an estate sufficient to pay all his debts,
though he appears to have been largely indebted,
mostly to Northern creditors, at the time of his death.
The very terms of the will make Mrs. Richardson, the

sister, and C. K. Bullard, the uncle, special legatees under the will, to the extent of their several just claims against the estate of the testator.   We do not think the facts authorized the court below in finding, that the notes were executed in the State of New York, and to be paid there.   They were dated at Matagorda, Texas, and whether they were actually executed in New York or in Texas, it is evident that the parties intended them to be paid in accordance with the laws of Texas; otherwise, it would seem that they had voluntarily entered into a contract within the State of New York, to be executed in accordance with its laws, when the contract was within itself repugnant thereto.   In Thompson v. Powells, 2 Simmons, 194 (2 English Chancery, 386), the chancellor says:   "In order to hold the contract usurious it must appear that it was made here, and that the consideration for it was to be paid here. It should appear at least that the payment was not to be made abroad, for if it was to be made abroad it would not be usurious.   There is nothing to show that it was to be made here, and I can not intend that it was to be made here, because that would be making an intendment merely to bring the case within the operation of a penal statute."

These cases apply to the one at bar.   Admitting that the notes were made in New York, they were dated at Matagorda, and we think that this very forcibly implies that they were to be paid in accordance with the laws of Texas, and that the inference is greatly strengthened by the fact that the notes were not repugnant to the laws of Texas, whilst they would have been to the laws of New York.   We are not authorized by any evidence furnished by the notes themselves, or elsewhere to be found in the record, to conclude that the parties intended a breach of the laws of either State.   The au-

thorities to support the view we take of this case are numerous, and are aptly cited in the former opinion of the court.

We will only remark further, that there was a valid subsisting indebtedness to the appellant at the time the will of Charles A. Bullard took effect; that the will could not be executed until these debts were paid, upon the supposition that there were assets to pay them. The will took the debt out of the statute of limitation. The judgment of the district court was erroneous; it should have been for the plaintiff in the action. The jury having been waived in the district court, it is the judgment of this court that the appellant recover from the appellee the amount of his debt, with interest and costs to be calculated by the clerk.

REVERSED AND RENDERED.