[Dawson v. Burrus & Williams.]

# Dawson *v.* Burrus & Williams.

*Bill in Equity to foreclose Mortgage.*

1. *Alienation of wife's homestead; examination separate and apart from the husband not required.*—The examination of the wife separate and apart from the husband, touching her voluntary signature and assent to a mortgage or other alienation of the homestead, is not required when the homestead is the property of the wife; but only when it belongs to the husband.

2. *Conveyance by wife; ignorance of contents when signed, insufficient to avoid.*—A married woman can not avoid the legal effect of her signature to a mortgage or other conveyance, otherwise valid, by merely showing that, when she signed it, she neglected to read it, and was ignorant of its contents. The reasonable presumption, in the absence of proof, is, that she was of sufficient intelligence to be able to read, and her ignorance will be attributable to her own neglect.

3. *Statute requiring suits to be brought in name of beneficial owner does not apply to suits in equity.*—Section 2890 of the Code of 1876, requiring that actions upon contracts, express or implied, for the payment of money, to be "prosecuted in the name of the party really interested," whether he has the legal title or not, does not apply to suits in equity.

4. *When trustee may file bill in his own name to foreclose mortgage.* An agent or trustee, intrusted with the exclusive control and management of money of his principal or beneficiary for the purpose of lending it on interest, having, without disclosing his principal's name in the transaction, made a loan thereof, taking a note therefor in his own name, secured by mortgage on land, which conveys the land to him, may maintain, in his own name, a bill in equity to foreclose the mortgage, the purpose of the suit being to reduce the money loaned to possession, an active duty imposed on him by the trust.

5. *Same; beneficiary not a necessary party.*—The principal or beneficiary, in such case, while he may be a proper party, is not a necessary party to the bill.

6. *Exhibits to bill in equity; may be proved viva voce at hearing, on proof of loss.*—Exhibits to a bill in equity may be proved *viva voce* at the hearing without the production of the originals, when they are shown to have been lost; and if the defendant is entitled to one day's notice under the rules of practice, a failure to object to the offered proof on that specific ground, is a waiver of it.

7. *Usury; statute of Georgia construed.*—A reasonable construction of the statute of Georgia, approved February 24th, 1875, fixing the legal rate of interest in that State at seven per cent. *per annum*, and authorizing a conventional rate of twelve per cent. *per annum*, by special agreement of the parties, and providing that "it shall not be lawful" to charge a rate of interest greater than that authorized, but not declaring whether usury shall vitiate the entire contract, or render it void only for the interest unlawfully charged, is, that the penalty for usury is intended to be only a forfeiture of the entire interest charged, and that a recovery can only be had for the principal.

8. *Same; when court of equity will not give interest on contracts tainted by.*—When a mortgagor, as complainant, seeks equitable relief against usury, he is usually required to do equity by paying or tendering the

[Dawson v. Burrus & Williams.]

principal with legal interest; but when, as in this case, the foreclosure of a mortgage securing a debt tainted with usury is sought by the mortgagee, and the usury is pleaded, no interest can be recovered.

APPEAL from Russell Chancery Court.

Heard before Hon JOHN A. FOSTER.

The bill in this cause was filed on 17th April, 1877, by Burrus & Williams, a mercantile partnership residing and carrying on business in the city of Columbus, in the State of Georgia, against William Dawson and Barbara Dawson, his wife, for the purpose of foreclosing a mortgage executed by said defendants on 27th March, 1875, conveying a tract of land situate in Russell county in this State, the equitable separate estate of Mrs. Dawson, the legal title to which was in one Dudley, as her trustee, and securing a note signed by both defendants for $223.50 and dated 27th March, 1875, at Columbus, Georgia. Copies of the note and mortgage were made exhibits to the bill. The mortgage was attested by two witnesses and recorded; but it was neither acknowledged nor probated. The land conveyed by the mortgage contained about three hundred and forty-five acres, and embraced the defendants' homestead. The cause was before this court at a former term, when the decree of the chancellor was reversed, and it remanded.—See *Burrus & Williams v. Dawson*, 66 Ala. 476.. After the remandment, the bill was amended by adding the trustee as a party defendant. The defenses set up by the defendants in their answers, and the facts disclosed by the evidence, necessary to an understanding of the points decided, are sufficiently indicated in the opinion.

At the fall term, 1881, on a submission of the cause "for a decree of reference," a decree was entered, ordering the register to state an account, and ascertain and report how much, if any thing, was due on the debt secured by the mortgage, directing how the account should be stated; ordering him further to "ascertain and report what, if any usury may be in said debt;" and reserving for future consideration "all other questions of whatever character, involving the rights and equities of the parties in this cause." On the reference had before the register under this decree, the complainants introduced in evidence, among other things, the original of their mortgage, and also the copy of the note exhibited to the bill. To the copy of the note the defendants objected, but their objection was overruled, and they excepted. At the spring term, 1882, the cause was submitted for final decree on the register's report and exceptions thereto, filed on behalf of the defendants, and on pleadings and proof. On this submission proof of the execution and loss of the note, and of its contents was made before the chancellor; and a decree was rendered overruling the defendants' plea of usury, and ordering the payment to the complainants of the sum of

[Dawson v. Burrus & Williams.]

$224.72, the amount reported by the register as due on the mortgage debt, and, in default of payment thereof within ten days, a sale of the premises conveyed by the mortgage.

The errors here assigned are based on this decree.

A. A. DOZIER and WM. H. BARNES, for appellant.

JAMES M. RUSSELL and GEO. D. & GEO. W. HOOPER, *contra.*

SOMERVILLE, J.—When this case was last before us on appeal (*Burrus & Williams v. Dawson*, 66 Ala. 476), we sustained the mortgage, for the foreclosure of which the bill was filed, as a valid incumbrance upon the lands conveyed, which were held to be the *equitable* separate estate of the wife, and liable, therefore, to be charged and conveyed by her as if she were a *feme sole.*

The claim of *homestead* sought to be set up in the mortgaged lands is clearly without merit. These lands are the property of the wife, Mrs. Barbara Dawson, and not of her husband, being her equitable separate estate. In such cases it is not necessary that the wife should be examined separate and apart from her husband, touching her voluntary signature and assent. Such an examination is required only where the property mortgaged, or alienated is owned by the husband. This was the state of the law in March, 1875, at the time of the execution of the mortgage, as it is now.— *Weiner v. Sterling*, 61 Ala. 98 ; Const. 1868, Art. 14, § 2 ; Acts 1872–73, pp. 64–65 ; Const. 1875, Art. 10, § 2 ; Code (1876), § 2822.

The evidence fails, in our opinion, to show, that the execution of the mortgage was obtained by fraud or misrepresentation. It is shown, it is true, that when Mrs. Dawson signed the instrument she neglected to read it, and she testifies that she did not know it conveyed the land in question. We must presume that her alleged ignorance is attributable to her own neglect, as the reasonable presumption, in the absence of proof to the contrary, is, that she was of sufficient intelligence to be able to read. Such a plea can not avail to avoid the legal effect of a signature otherwise valid.— *Gœtter v Pickett*, 61 Ala. 387.

The bill is properly filed in the name of the present complainants, Burrus & Williams, who are the *payees* of the note and also the *mortgagees*. It is immaterial that the money belonged to one Felix Burrus, as the complainants were entrusted with its exclusive control and management for the purpose of lending it on interest, and the transaction was one entirely between the parties, Felix Burrus being altogether unknown as having any interest in the subject-matter. The *cestui que trust,*

in such cases, may be a *proper* party, but he is not a *necessary* one.—2 Perry on Trusts (3d Ed.), § 874; 1 *Ib.* §§ 329, 330; *Huckabee v. Swoope*, 20 Ala. 491; *Blevins v. Buck*, 26 Ala. 292; *Hitchcock v. U. S. Bank*, 7 Ala. 388. The complainants are not mere nominal or naked trustees, but trustees of an express trust, with active duties imposed on them, and the purpose of the suit is to reduce the money loaned to possession. This they have a right to do as a necessary power in the proper and continued execution of their agency, which is a strictly fiduciary one.—2 Jones on Mortg. § 1383; *Sill v. Ketcham*, Harr. (Mich.) Ch. 423. It is proper to add, that section 2890 of the Code (1876), requiring all "actions" upon contracts express or implied, for the payment of money, to be "prosecuted in the name of the party *really interested*, whether he has the legal title or not," has no application to courts of equity, but only to proceedings in courts of common law.

There was no error in the chancellor's allowing proof of the exhibit to the bill *viva voce*, without production of the *original*, which was shown to have been lost. The powers of the chancellor in this respect were certainly as great as those of the register, whose neglect in this particular the action of the chancellor was intended to supplement. If the opposite party was entitled, under the rules of practice, to one day's notice, they should have objected on this specific ground. A failure to do so operated as a waiver.—66th Rule Ch. Prac., Code, 1876, p. 170; 17th Rule Ch. Pr., *Ib.* p. 164; 1 Brick. Dig. p. 749, § 1627.

It is insisted that the chancellor erred in ruling that the mortgage debt was not usurious.

It is needless to discuss the question as to the law by which the present contract is to be governed, that of Alabama where it was executed, or that of Georgia where it bears date. The authorities are greatly conflicting touching contracts of this nature, in which the matter of usury is involved.—Tyler on Usury, 79 *et seq.*; Story on Conflict of Laws, §§ 291–92, 280; 2 Jones on Mort. §§ 656–661; Whart. on Confl. Laws, §§ 510, 508; *Moore v. Davidson*, 18 Ala. 209; 1 Daniel on Negot. Instr. §§ 639, 923; *Bullard v. Thompson*, 35 Tex. 313.

The defendants have set up the defense of usury both under the laws of this State and of Georgia, introducing a statute of the latter State, approved February 24th, 1875, which fixes the legal rate of interest at *seven* per cent. *per annum*, and authorizes a conventional rate of *twelve* per cent. *per annum*, by special agreement of the parties. The language of the act is, that "it shall not be lawful" to charge a rate of interest greater than that authorized; but it is not declared whether a charge of usury shall vitiate the entire contract, or render it void only for

the interest unlawfully charged. A reasonable construction of the act is, that the penalty for such usury is intended to be only a forfeiture of the entire interest charged over and above the principal, and that a recovery can be had for the principal. Such is the construction adopted by the Supreme Court of Georgia in *Lanier v. Cox*, 65 Ga. 265, where this statute is construed, and we think it the correct interpretation of the legislative purpose. If this decision were before us as *evidence*, we might take it as conclusive, as the construction of the statute of a sister State by her highest judicial tribunal.

The statutes of this State, in like manner, only operate to render such contracts voidable to the extent of the interest charged, declaring that they "can not be enforced except as to the principal."—Code, § 2092; *Bradford v. Daniel*, 65 Ala. 133.

The principal of the mortgage debt, as originally created, was only two hundred dollars. It is manifest that the interest charged, which is twenty-three dollars and a half for seven months, is not only in excess of the legal rate of interest in Alabama, but also of the conventional rate of twelve per cent. allowed in Georgia.

The effect of this is to forfeit the entire interest, inasmuch as the mortgagees are the active parties seeking the aid of the court to enforce their claim by a foreclosure, and usury is set up as a mere defense.—*Hunt v. Acre*, 28 Ala. 580; 1 Whart. on Contr. § 469; Tyler on Usury, 448. Where the mortgagor, or borrower, seeks equitable relief against usury as a complainant, himself invoking the aid of a court of equity, he is usually required to do equity by paying or tendering the principal with legal interest.—*Eslava v. Elmore*, 50 Ala. 587; *Uhlfelder v. Carter*, 64 Ala. 527; *Morgan v. Schermerhorn*, 19 Amer. Dec. 449. "The ground of this distinction," as observed by Mr. Story, "is, that a court of equity is not positively bound to interfere in such cases by an active exertion of its powers; but it has a discretion on the subject, and may prescribe the terms of its interference, and he who seeks equity at its hands may well be required to do equity. But, in the other case, if equity should relieve the lender, who is plaintiff, it would be aiding a wrong-doer, who is seeking to make the court the means of carrying into effect a transaction, manifestly wrong and illegal in itself."—1 Story's Eq. Jur. (12th Ed.), § 301.

There is nothing in the other assignments of error affecting the merits of the cause.

The costs of this appeal will be taxed equally between the appellants and appellees.

The decree of the chancellor is reversed, and a decree will

be rendered in this court, adjudging the complainant to be entitled to recover the sum of two hundred dollars, the principal of their mortgage debt, less a credit for the sum of $59.35, as of December 4, 1875, with lawful interest only from March 17, 1882, the date of the chancellor's decree; and for this sum a foreclosure of the mortgage debt will be decreed upon the lands described in the bill.