Delivered January 13, 1891.

---

## J. H. Dugan et al. v. C. W. Lewis et al.

### No. 2895.

1. **Usury—Conflict of Laws—Interstate Contracts.**—A citizen of Texas through New York bankers negotiated a loan. The papers were prepared in New York, but the notes for the loan and expenses and a deed of trust upon lands in Texas to secure the loan, etc., were executed in Texas and transmitted to New York, where the loan was perfected by the delivery of the borrowed money. The notes bore 10 per cent per annum interest, and provided that on failure to pay interest within thirty days after maturity the holder of the note could declare the principal due. Upon such failure the note for the loan was declared due, and an attempt was made to foreclose by sale under the deed of trust. The maker of the note and a purchaser of the equity of redemption

. sought to enjoin the foreclosure on ground of usury, in that by the laws of New York, where the loan was negotiated and the note payable, the stipulated interest vitiated the contract.. *Held:*

1. A citizen of one State contracting a debt with a citizen of another may make the interest according to the laws of either State.

2. Where the parties to such contract distinctly provide, or where from other facts their intention can be ascertained, the matter of where the contract was made or where to be executed will be immaterial.

3. Usury laws, however, can not be evaded by parties naming a State whose laws shall control the contract, but they could legally name the State where the debtor resides.

4. The clause in the deed of trust that "the contracts embodied in this conveyance and the notes secured hereby shall in all other respects be construed by the laws of the State of Texas, where the same is made," may be taken as a circumstance to be considered in ascertaining and giving effect to the intention of the parties to the contract.

5. The injunction restraining the foreclosure sale was properly refused.

2. **Construction of Contract—Usury.**—The note to run for five years, but with power in the holder to declare it due upon the failure to pay interest, upon being declared due for such failure becomes an obligation for the principal and the interest already accrued. The unearned interest forms no part of the debt, and can not be added so as to make the interest usurious.

APPEAL from Grayson. Tried below before Hon. H. O. Head. The opinion gives a statement.

*Brown & Bliss, E. C. McLean* and *J. W. Findlay,* for appellants.—
1. The two notes aggregating $750 payable to C. W. Lewis, although dated as in Texas and signed in Texas, were under the facts in this case made in New York. Whistow v. Stodder, 13 Am. Dec., 281; 1 Rand. on Com. Paper, sec. 24; Pars. on Bills and Notes, 324; Scudder v. Bank, 91 U. S., 406; Cook v. Moffatt, 99 U. S., 214; Boyce v. Edwards, 4 Pet., 111; Andrews v. Pond, 13 Pet., 78; Milliken v. Pratt, 125 Mass., 374; Kling v. Fries, 33 Mich., 275; Webber v. Donnelly, 33 Mich., 49; McIntyre v. Parks, 3 Mich., 207.

2. The two notes, one for $300 the other for $450, payable to C. W. Lewis, as well as the note for $5000 payable to American Freehold, Land, and Mortgage Company, were New York contracts, governed and controlled by the law of New York as to usury, and each of said notes and deeds of trust to secure same were by laws of said State absolutely void. Story on Conf. Laws, secs. 304, 304a; Lockwood v. Mitchell, 70 Am. Dec., 78; De Wolf v. Johnson, 10 Wheat., 368; Sands v. Smith, 93 Am. Dec., 331; Jones on Mort., sec. 657, and authorities cited; Curtis v. Leavit, 15 N. Y., 228; 2 Kent's Com., secs. 460, 461; Sherwood v. Roundtree, 32 Fed. Rep., 113; Martin v. Webb, 110 U. S., 14; Bish. on Cont., sec. 113; Connor v. Donnell, 55 Texas, 167; Andrews v. Hoxie, 5 Texas, 167; Andrews v. Pond, 13 Pet., 78; Boyce v. Edwards, 4 Pet., 111; De Sobry v. De Laistre, 3 Am. Dec., 536; Dickinson v. Edwards, 77 N. Y., 573; Jewell v. Wright, 30 N. Y., 259; Lee v. Selleck, 33 N. Y., 615; Scudder v. Bank,

91 U. S., 406; Lapice v. Smith, 13 La. Ann., 91; Clague v. Creditors, 2 La. Ann., 114; note to Arayo v. Curren, 20 Am. Dec., 293.

3. The court erred in holding that the clause in the deed of trust as follows, "The contracts embodied in this conveyance and the notes secured hereby shall in all other respects be construed according to the laws of Texas, where the same is made," made said notes a Texas contract and that the question of usury is to be decided by the laws of Texas:

(1) Because the said language does not support the conclusion.

(2) Because parties could not import the laws of another State into a contract by intention, and could not make the laws of Texas govern and control a contract that was by law governed and controlled by the laws of New York.

(3) Because the facts show that there was no such agreement made between the parties.

(4) Because it is apparent from the facts as found by the court that the clause was inserted in the deed of trust for the purpose of evading the usury laws of the State of New York. Jones on Mort., sec. 658; 1 Greenl., sec. 285

*Brown & Hall* and *A. T. Watts,* for appellees.— 1. The two notes, aggregating $750, payable to C. W. Lewis, dated, executed, and delivered in Texas, could not under the facts of the case be considered other than a Texas contract, and the learned judge could not hold otherwise on the hearing of the cause in the court below. Andrews v. Hoxie, 5 Texas, 171; Bullard v. Thompson, 35 Texas, 319; 4 Wait, 148 (citing 3 Wis., 78; 3 Chand., 83; 25 Ohio, 413); 8 Wait, 597; Merks v. Land and Mort. Co., 7 S. W. Rep., 265; De Wolf v. Johnson, 10 Wheat., 368; Andrews v. Pond, 13 Pet., 73; 46 Iowa, 46; Mort. Co. v. Towns, 1 South. Rep., 242.

2. The two notes, one for $300 and the other for $450, payable to C. W. Lewis, and the note for $5000 payable to the American Freehold, Land, and Mortgage Company, being executed and delivered in Texas, and it being stipulated in the deed of trust executed at the same time and place to secure said notes by G. H. Dugan and his wife, and which must be construed together with the notes as constituting one contract, that "the contracts embodied in this conveyance and the notes secured hereby shall in all other respects be construed by the laws of the State of Texas, where the same is made," conclusively settles the question that the contracts are Texas and not New York contracts. Miller v. Tiffany, 1 Wall., 298; 38 Barb., 352; Tyler on Usury, 84, 85; 31 Am. Dec., 264, 265; Lyon v. Ewing, 17 Wis., 22; 5 Texas, 171; 35 Texas, 319.

3. The court did not err in holding that the stipulation in the deed of trust authorizing the lender to declare the notes due on failure to pay the installments of interest as due is to be construed in the nature of a penalty. Tardevan v. Smith, 3 Am. Dec., 727; Gambrell v. Doe, 44 Am. Dec.,

760; 34 Am. Dec., 150; 3 Pars., 116; 3 Pars., 132; 44 Am. Dec., 388; 53 Texas, 559; 10 N. J. Eq., 491; 4 St. Rep., 576; 66 Am. Dec., 350; 69 Am. Dec., 71; 7 Wait, 608; 28 Barb., 33; 16 How., 104; 37 Barb., 60; 23 How., 401; 3 Abb., 204; 32 Am. Dec., 623, and note; 1 Wall., 618.

HENRY, ASSOCIATE JUSTICE.—G. H. Dugan, who at the time was a resident citizen of the State of Texas, acting through an agent in the State of New York, borrowed from the American Freehold, Land, and Mortgage Company of London, England, the sum of $5000.

Dugan executed his note in favor of the mortgage company for said sum, payable at the office of the Corbin Banking Company in New York City five years after date, with interest from date at the rate of 8 per cent per annum, for which five coupon notes were attached to said note. The note contained a stipulation for the payment of 10 per cent attorney fee if it should be collected by suit, and another making the principal of the note become due at the option of the holder thereof upon the failure to pay any installment within thirty days after it should become due.

Dugan, to secure said note, executed a deed of trust upon land in Texas, in which one Sherwood, the agent in New York of the lender, was made trustee. The agreement to lend the money was made in the State of New York, and the deed of trust and the note were delivered to the lender in that State. The $5000 was paid to Dugan's agent in the State of New York.

The note and coupons and the deed of trust were dated and signed by Dugan in the State of Texas. The deed of trust contained the following clauses:

"Upon the failure of the borrower to pay said note or either of said coupons, or failure to comply with any of the stipulations contained in the said deed of trust, the whole sum of money secured thereby may, without notice to the borrower, at the option of the lender or his assigns, and at his option only, be declared due and payable at once.

"The contracts embodied in this conveyance and the notes secured hereby shall in all other respects be construed according to the laws of the State of Texas, where the same is made."

At the date of these transactions the rate of interest in the State of New York was 6 per cent, and the reservation of a greater rate rendered the contract void.

Dugan made default in the payment of interest, and the whole amount was declared due.

Out of the $5000 the sum of $2135.66 was used, without its reaching Dugan's hands, to pay off a prior mortgage upon the land.

For the purpose of paying the Corbin Banking Company for its services in procuring the loan, Dugan executed two other notes and secured them by a second deed of trust upon the same land; one for $300 and the other for $450, both bearing 10 per cent interest from date.

They were both executed and delivered in Texas. They were made payable to C. W. Lewis, who resided in Texas, at the office of the Corbin Banking Company in the State of New York. Lewis had no pecuniary interest in these notes, and he transferred them to the Corbin Banking Company.

This suit was brought by appellants to restrain the enforcement of the deed of trust, on the ground that the contracts are governed by the laws of the State of New York, and are therefore usurious and void.

The cause was tried without a jury, and the court, upon a finding of facts from which we have taken the foregoing statement, rendered judgment in favor of the defendants.

The subject of the conflict of laws of interest and usury as affecting the enforcement of contracts has been much discussed and opinions have conflicted, sometimes as to the law and at others as to the effect of different conditions of fact.

In the case of Connor v. Donnell, 55 Texas, 174, this court said: "If the note sued on be made in New York, and be also expressly made payable at a point in that State, then the question of usury will be controlled by the law of New York. It is believed that no authority can be adduced to the contrary." We find a very great number of authorities announcing the same doctrine upon a like state of facts.

This case contains also the following language:

"Although a note be actually made and endorsed by citizens of Texas in New York, and be there discounted by a citizen of New York at a rate lawful in Texas but usurious in New York, if by date and tenor of the note it appears that the parties intended to make it payable in Texas and contracted with reference to the laws of Texas, the courts of this State follow the authorities which hold such a note valid." Citing Bullard v. Thompson, 35 Texas, 319; Depau v. Humphreys, 8 Mart. (N. S.), 1; and Chapman v. Robertson, 6 Paige, 627.

The two cases last named have been much discussed and doubted and opposed by courts whose decisions would hold the contract now under consideration obnoxious to the charge of usury.

Both cases are criticised and their correctness questioned by Story in his work on the Conflict of Laws.

The Louisiana case is stated by him as follows: "The note was given in New Orleans, payable in New York, for a large sum of money, bearing an interest of 10 per cent, being the legal interest of Louisiana, the New York legal interest being 7 per cent only. The question was whether the note was tainted with usury and therefore void, as it would be made in New York. The Supreme Court of Louisiana decided that it was not usurious; and that although the note was made payable at New York, yet the interest might be stipulated for either according to the law of Louisiana or according to that of New York."

The Supreme Court of the United States has approved this doctrine in the cases of Miller v. Tiffany, 1 Wallace, 298, and Cromwell v. The County of Sac, 96 United States, 62.

In the case last mentioned the opinion contains the following expression: "When the rate of interest at the place of contract differs from the rate at the place of payment the parties may contract for either rate and the contract will govern," citing the above named cases and also Peck v. Mays, 14 Vermont, 33, and Butters v. Olds, 11 Iowa, 1.

In the case of Bullard v. Thompson, 35 Texas, 319, it was said by this court:

"They (the notes) were dated at Matagorda, Texas, and whether they were actually executed in New York or in Texas, it is evident that the parties intended them to be paid in accordance with the laws of Texas; otherwise it would seem that they had voluntarily entered into a contract within the State of New York, to be executed in accordance with its laws, when the contract was within itself repugnant thereto." Page 407.

The case of Chapman v. Robertson, as stated by Story, was as follows:

"A citizen of New York applied in England to a British subject for a loan of money upon the security of a bond and mortgage upon land in New York, at the legal rate of interest (7 per cent) of that State; and it was agreed that the borrower should, upon his return to New York, execute the bond and mortgage and duly record the same; and upon the bond and mortgage being received in England the lender agreed to deposit the money loaned at the bankers of the borrower in London for his use; and the bond and mortgage were executed and received, and the money paid accordingly to the bankers. The question arose whether the transaction was usurious or not, and that depended upon the law of the place by which it was to be governed, whether by the law of England (where interest is only 5 per cent) or by the law of New York.

"It was held by the court that the contract was to be construed according to the laws of New York, and therefore that a bill to foreclose the mortgage filed in New York was maintainable, and that the law of usury of England was no defense to the suit. On that occasion the learned chancellor said that as no place of payment was mentioned in the bond or mortgage, the legal construction of the contract was that the money was to be paid where the obligee resided or wherever he might be found; that the residence of the obligee being in England at the time of the execution of the bond, that must be considered the place of payment for the purpose of determining the question where that part of the contract was to be performed, and that the execution of the bond in New York did not make it a personal contract there, because it was inoperative until received in England and the money deposited with the bankers for the borrower. And he concluded by saying:

"'Upon a full examination of all the cases to be found upon the subject,

either in this country or in England, none of which, however, appear to have decided the precise question which arises in this cause, I have arrived at the conclusion that this mortgage executed here, and upon property iu' this State, being valid by the *lex situs,* which is also the law of the domicile of the mortgagor, it is the duty of this court to give full effect to the security without reference to the usury laws of England, which neither party intended to evade or violate by the execution of a mortgage upon the lands here.'" Story on Confl. Laws, 400, 401.

In the opinion itself it is further said: "No doubt appears to have been entertained as to the validity of a loan upon a bond and mortgage actually executed in Ireland or the colonies, though the loan itself was made in England and was made payable there to a mortgagee who resided there. * * *

"Here the verbal contract for a loan upon the security of a mortgage upon lands in this State was wholly inoperative until the mortgage and written security were executed in this State. It was a contract made partly in this State and partly in England, and being actually made with reference to our laws and to the rate of interest allowed here, it must be governed by them in the construction and effect of the contract as to its validity." 6 Paige, 631, 634.

If it be admitted' that in the absence of an express stipulation as to the place of the payment of the debt it was payable at the residence of the obligor in New York instead of the residence of the payee in England, the principle of the decision will not be affected, as it was expressly placed upon the ground that the debt was payable in England. The case decided was that a debt contracted in England by a resident of New York, payable in England, and the money received there by the borrower, secured by a note and deed of trust upon land in the State of New York, which were signed in that State but delivered to the lender in England, and stipulating for a rate of interest lawful in New York but usurious in England, was valid and enforceable in a court of New York.

The case decided was in every material respect similar to the one now before us. Kilgore v. Dempsey, 25 Ohio, 415; Townsend v. Riley, 46 N. H., 308; Fitch v. Remer, 1 Biss., 337.

In the case of Arnold v. Potter, 22 Iowa, 195, the plaintiff, who was a resident of the State of Massachusetts, sued the defendant, who resided in Iowa, upon a debt contracted in the State of Massachusetts and payable in New York for a rate of interest usurious in both of said States but lawful in Iowa. The notes and trust deed were delivered in the State of Massachusetts and the money was received there by the borrower. The defendant pleaded usury, and contended that the contract was to be governed either by the laws of New York or Massachusetts.

The plaintiff contended that it was an Iowa contract and made in good faith with reference to her laws.

The Supreme Court approved the following charge given by the judge of the District Court: "If defendant went to Boston and urged the loan and promised 10 per cent under the laws of Iowa, and all the arrangements and contracts were made as to the laws of Iowa in good faith, and no more than 10 per cent was contracted for, then the defense fails and plaintiff can recover. If the parties in good faith loaned and borrowed the money sued for, with a full understanding that the law of Iowa was to govern as to the interest, then the laws of New York and Massachusetts can have no influence here, but the understanding of the parties must prevail."

In the opinion of the Supreme Court it is said: "Parties may in good faith contract with reference to the place where the payor resides and where the property upon which the security is taken is located."

In Randolph on Commercial Law it is said: "If the money is employed on the land mortgaged, and borrowed for that purpose, it has been held that the *lex loci rei sitæ* should apply." Page 23. Whart. Confl. Laws, sec. 510; Fitch v. Remer, 1 Biss., 337.

We readily concur in the rule announced by the Supreme Court of the United States and the doctrine of the cases cited, which are in entire harmony with it.

The doctrine established that a citizen of one State contracting a debt with a citizen of another may make the interest according to the law of either, the solution of such a case as the one now before us can not long be doubtful, for the contracting parties having the right to enforce their own wishes on the subject, the mere form of manifesting their purpose can not be treated as of importance.

There is no reason why their making their contract in one State instead of in the other, nor why their making it payable in one State instead of in the other, should have a controlling influence over the question.

Doing either will, in the absence of other evidence, serve to show their purpose and control the result.

But not so when they otherwise distinctly provide or when from other facts their intention can be more satisfactorily ascertained.

It must be kept in view that usury laws cannot be evaded under cover of naming a State whose laws shall control the contract.

It is difficult, however, to conceive how that result can ever proceed from the State of the actual residence of the debtor being named.

The difficulty is emphasized when the right of the parties to contract with reference to the laws of that State is conceded, without there being any difficulty on the subject except the method of developing the intention.

It is not entirely clear to us that the language contained in the deed of trust that "the contracts embodied in this conveyance and the notes secured he eby shall in all other respects be construed by the laws of the State of Texas, where the same is made," has reference to the rate of in-

terest except in a general way. The question as it is involved in this case can hardly be said to be a question of the construction of the contracts.

We think, however, that the expression should be taken as a circumstance to be considered in ascertaining and giving effect to the intention of the parties to the contracts.

It is contended that as the deed of trust provides that on failure of the borrower to pay said note or either of said coupons, or failure to comply with any of the stipulations contained in said deed of trust, the whole sum of money secured thereby may without notice to the borrower, at the option of the lender or his assigns, and at his option only, be declared due and payable at once, and the trustee was authorized to take possession and sell the land; and as default was made in the payment of the coupon due December 1, 1887, and the whole amount was declared due, the whole five years interest became collectable according to the terms of the contract long before the termination of the five years, thus making the interest reserved greater on the happening of the contingency than 12 per cent per annum, and the contract usurious under the laws of this State.

We do not think that a correct construction of the contract will make a greater amount of interest due and collectable upon it than shall have accrued on the principal calculated up to the date of collection at the rate named in the note; or in other words, that any unaccrued interest comes within the proper meaning of the stipulation.

In any event we agree with the conclusion of the judge before whom the cause was tried that said stipulation "is to be construed as a penalty which will not be enforced except upon canceling the unearned interest notes, and that it does not make the contract usurious."

We find no error in the proceedings, and the judgment is affirmed.

*Affirmed.*

Delivered January 13, 1891.