**In re OKLAHOMA RY. CO.**

**No. 7534.**

District Court, W. D. Oklahoma.
June 12, 1945.

D. I. Johnston and Roy C. Lytle, both of Oklahoma City, Okl. (of Keaton, Wells & Johnston, of Oklahoma City, Okl.), and W. J. Wallace, of St. Louis, Mo., for Mississippi Valley Trust Co.

Kent Shartel, of Oklahoma City, Okl. (of Richardson, Shartel, Cochran & Pruet, of Oklahoma City, Okl.,), and Streeter B. Flynn, of Oklahoma City, Okl. (of Rainey, Flynn, Green & Anderson, of Oklahoma City, Okl.), for debtor.

VAUGHT, District Judge.

This is an application of the Mississippi Valley Trust Company of St. Louis, Missouri, as Indenture Trustee under the first mortgage bond issue, to have the court construe its order of December 9, 1944, to vacate the same as being incorrect, and to make an order directing the Debtor's Trustee to pay interest on the claim of the applicant upon what is claimed as delinquent unpaid interest coupons.

The record discloses the following facts: The Oklahoma Railway Company, the debtor in these proceedings (hereinafter referred to as the Debtor), on January 3, 1911, executed a Trust Indenture in favor of the applicant as Trustee securing an issue of $12,000,000 of first refunding mortgage five per cent. gold bonds, and under said authorization, $5,280,000 were issued, and on September 27, 1939, there were outstanding and unpaid bonds of a par value of $2,447,000. The Trust Indenture, so far as pertinent here, is as follows:

"Resolution of
"Board of
"Directors.

"Whereas, the board of directors of the Railway Company, at a meeting of said board duly convened and held on the 10th day of April, A. D. 1911, did vote and determine to exercise the power conferred upon said corporation to borrow money as aforesaid and did vote and order that the bonds of the Railway Company should be issued in the aggregate sum of twelve million dollars ($12,000,000), to be evidenced by twelve thousand bonds of the Railway Company, in the denomination of one thousand dollars ($1,000) each, dated as of the

third day of January, A. D. 1911, and due and payable January 1, 1941, with interest from January 1, 1911, until paid at the rate of five per centum (5%) per annum, payable semi-annually, the interest until maturity of the bonds, to be evidenced by coupons attached thereto, both principal and interest being payable in gold coin, as will more fully appear in the form of bond and coupon herein set out at large, * * *.

\* \* \* \* \* \*

"(Form of Bond.)

"United States of America
"State of Oklahoma

"Oklahoma Railway Company

"First and Refunding Mortgage Five Per Cent. Gold Bond.

"No. ——                    $1,000.

"Oklahoma Railway Company, a corporation created and existing under the laws of Oklahoma, for value received, promises to pay to the bearer hereof, or, if this bond be registered, to the registered holder hereof, at Mississippi Valley Trust Company, St. Louis, Missouri, or, at the option of the holder, at Harris Trust and Savings Bank, Chicago, Illinois, One Thousand Dollars in gold coin of the United States of America, of or equal to the present standard of weight and fineness, on the first day of January, 1941, and to pay interest thereon from the first day of January, 1911, until paid, at the rate of five per cent. per annum, payable semi-annually, on the first days of July and January in each year in like gold coin, at said Mississippi Valley Trust Company or, at the option of the holder of coupons, at said Harris Trust and Savings Bank, such interest until the maturity hereof being payable only upon presentation and surrender of the respective interest coupons hereto annexed evidencing such interest.

\* \* \* \* \* \*

"If default shall be made in the payment of the interest on this bond or in the performance of any of the covenants and agreements in said deed of trust, contained, on the part of the Railway Company to be performed, then the principal hereof may be declared and become due and payable as provided therein.

\* \* \* \* \* \*

"(Form of Coupon.)

"$25.                    No. ——

"Oklahoma Railway Company will pay to bearer, upon surrender hereof, at Missis-

sippi Valley Trust Company, St. Louis, Missouri, or at the option of the holder at Harris Trust and Savings Bank, Chicago, Illinois, upon the first day of ——, A.D. 19—, Twenty-five Dollars ($25), in gold coin of the United States of America, being interest then due on First and Refunding Mortgage Five Per Cent. Gold Bond of said Railway Company No. ——, all as provided in and subject to the terms of said bond and the deed of trust therein mentioned.

"———————

"Treasurer.

\* \* \* \* \*

"Article Eight.

"Covenant to pay principal and interest.

"Section 1. The Railway Company covenants that it will pay the principal of all the bonds issued under this indenture, and interest thereon until paid, such interest until the maturity of said bonds being payable only upon presentation and surrender of the interest coupons thereto belonging, when the same shall become due according to the terms thereof, such payments to be made in gold coin of the United States, of the present standard of weight and fineness, and without deduction from the principal or interest for any tax or taxes, charge or charges which the Railway Company may be required to pay or to retain therefrom under any present or future law of the United States, or of the State of Oklahoma, or any county or municipality therein. When and as the coupons attached to the said bonds shall be paid by or for the Railway Company, such coupons shall be canceled.

"Covenant not to extend coupons.

"Section 2. In order to prevent any accumulation of coupons after their maturity, the Company covenants and agrees that it will not directly extend or assent to the extension of the time for payment of any coupons of any of the bonds secured hereby by purchase or funding of such coupons or by any other arrangement. In case the time for payment of any such coupon shall be so extended, such coupon shall not be entitled in case of any default hereunder to the benefit or security of this indenture, except subject to the prior payment in full of the principal of all bonds issued and outstanding hereunder and of so much of the accrued interest thereon as shall not be represented by such extended coupons.

\* \* \* \* \* \*

98

"Article Nine.

"Upon default Trustee may proceed to enforce rights.

"Section 2. In case (1) default shall be made in the due and punctual payment of any interest on any bond hereby secured and any such default shall continue for a period of sixty days; or (2) default shall be made in the due and punctual payment of the principal of any bond hereby secured; or (3) default shall be made in the due observance or performance of any other covenant, condition or agreement herein required to be kept or performed by the Railway Company and any such last mentioned default shall continue for a period of sixty days after written notice thereof to the Railway Company from the Trustee, then in any and every case the Trustee may, and upon request of the holders of a majority of said bonds then outstanding shall, (1) cause this indenture to be foreclosed in any court of competent jurisdiction and the mortgaged property or any part or parts thereof to be sold; * * *

* * * * * *

"Section 4. The proceeds arising from any such sale or sales shall as received be applied as follows:

* * * * * *

"Second. To the pro rata payment of all coupons matured and remaining unpaid, with interest thereon at the rate of five per cent. (5%) per annum (subject to the provisions of Section 2, Article Eight hereof), and, after payment of such interest which shall have become due, the residue of such proceeds shall be applied in and towards the payment of the principal of such bonds as at that time may be outstanding hereunder, ratably and without discrimination or preference, until the same shall be fully paid; * * *."

On September 5, 1939, Mississippi Valley Trust Company, as Indenture Trustee, notified the Debtor of default in certain of the covenants contained in the Trust Indenture and demanded that such defaults be remedied within sixty days. The Debtor advised the Indenture Trustee soon thereafter that it admitted the defaults, that they had continued for a period of one year, that it could not remedy such defaults within sixty days or any other date, and that the Indenture Trustee might invoke any remedies or rights granted to it in the Trust Indenture for the protection of the bondholders. On September 25, 1939, the Indenture Trustee, pursuant to the terms of the Trust Indenture, declared all of the issued and outstanding bonds in the face amount of $2,447,000 to be due and payable and demanded immediate payment of the full amount represented by the outstanding bonds.

On September 27, 1939, the Debtor filed its petition in this cause under Chapter 10 of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. At the time the petition was filed, there were no unpaid interest coupons due on the outstanding bonds, the last matured semi-annual interest coupons having been paid on July 1, 1939.

On February 10, 1940, the applicant filed its claim as a secured claim herein, said claim thereafter was allowed in the sum of $2,447,000, with interest at five per cent. until paid, and said claim as allowed was secured by a first mortgage on Debtor's property. The bonds have been paid in full with five per cent. interest computed from July 1, 1939, to the date of payment. This application is for the purpose of having the court determine the amount of unpaid interest due, if any, after payment of the full amount of the principal together with interest at five per cent. thereon from July 1, 1939. The applicant concedes that all the principal has been paid and interest thereon at five per cent. from July 1, 1939.

This is one of those rare cases where the Debtor, during the administration in bankruptcy, has become solvent and able to pay its debts in full.

The applicant sets up four propositions in its brief:

First. Does the interest on the principal by virtue of the accelerated maturity of the bonds carry, after such maturity, interest at the contract rate or at the legal rate?

Second. Do the matured and unpaid semi-annual interest obligations bear interest from the date that the interest obligation should have been paid to date?

Third. What is the effect upon the foregoing propositions of the maturity date, or accelerated maturity date of the bonds?

Fourth. What is the effect, if any, of the intervention of the proceedings in bankruptcy?

The fourth proposition will be considered first. The rule is well stated in 8 C.J.S., § 422, under Bankruptcy, which, so far as it is pertinent here, is as follows:

"As a general rule, the proof and allowance of a provable claim may include interest which has accrued thereon and would

be recoverable at the time of the filing of the petition in bankruptcy; but interest accruing thereafter cannot be proved or allowed; and if the debt does not appear to have been due prior to the filing of the petition the allowance of the claim should not carry interest.

"The foregoing restriction on the right to receive interest accruing subsequent to the filing of the petition is applicable only in cases where the estate is insolvent, and if it is solvent interest is properly allowed and paid up to the time of the payment of the claim * * *.

"If it is legal, the rate of interest allowable is usually that which the bankrupt has agreed to pay; * * *. In the absence of a contractual specification of the rate, the interest allowable is the ordinary legal rate; * * *.

"On secured claims. Where a valid and unavoidable lien of a secured creditor secures the payment of both principal and interest, and the security or its proceeds are sufficient for that purpose, the creditor is entitled to obtain or take from the security or its proceeds, as against the trustee in bankruptcy, not only the interest accruing before the filing of the petition in bankruptcy but all interest up to the date the debt is paid. * * *"

█ Thus, it appears to be the general rule that where the bankrupt estate is solvent, a secured creditor is entitled to interest on his claim up to the date it is paid in compliance with the terms of the contract. The contract (the bond) in the present situation provides as follows:

"* * * with interest from January 1, 1911, until paid at the rate of five per centum (5%) per annum, payable semi-annually, *the interest until the maturity of the bonds, to be evidenced by coupons attached thereto, * * *.*"

The coupons themselves do not provide for the payment of interest upon default, but under Article Nine, section 4, supra, it is provided that in the event of foreclosure and sale of the property, the proceeds arising therefrom shall be applied as follows:

"Second. To the pro rata payment of *all coupons matured and remaining unpaid, with interest thereon* at the rate of five per cent. (5%) per annum * * *."

The bonds provide that only in case of foreclosure, interest is to be paid on "coupons matured and remaining unpaid." There is no foreclosure here. Under the terms and provisions of the instrument the interest on the bonds is at the rate of five per cent. per annum "until paid." Those are the plain terms of the bond.

█ The first three propositions, which are so closely related, will be considered together.

On September 25, 1939, the action of the applicant, in declaring the entire amount of bonded indebtedness immediately due and payable, accelerated the maturity of the bonds. There were no delinquent unpaid interest coupons on that date.

The bonded indebtedness together with interest thereon then due constituted the basis for the claim and were merged into the claim, which was allowed at the face of the bonds plus five per cent. interest from July 1, 1939, until paid.

In the case of Garland et al. v. Union Trust Company et al., 63 Okl. 243, 165 P. 197, 202, 203, the Supreme Court of Oklahoma had under consideration this principle of law and, in very clear language, I think correctly stated the law as follows:

"* * * By this we do not mean to intimate that plaintiff, *had it sued therefor, which it did not,* was entitled to recover in this action on the interest coupons *not due at the time the trustee accelerated the maturity* of the principal debt and foreclosed therefor. On the contrary, on this point, we mean to say that recovery upon those coupons could not be had for the reason that the *moment* the principal debt and interest, accrued up to the time to which the *maturity of the debt was accelerated,* are paid, the remaining undue interest coupons are discharged. This is in keeping with authority (Dugan et al. v. Lewis et al., 79 Tex. 246, 14 S.W. 1024, 12 L.R.A. 93, 23 Am.St.Rep. 332; Georgia S. & F. R. Co. v. Mercantile [Trust & Deposit] Co., 94 Ga. 306, 21 S.E. 701, 32 L.R.A. 208, 47 Am.St. Rep. 153; Goodale v. Wallace, supra [19 S.D. 405, 103 N.W. 651, 117 Am.St.Rep. 962, 9 Ann.Cas. 545]; Moore et al. v. Cameron et al., 93 N.C. 51), and is plaintiff's theory of the case. It is also carried into the judgment of the court who permitted a recovery for the principal debt only, together with interest thereon at 6 per cent. from December 1, 1912, or the time when the first two notes fell due, up to the date of the judgment.

\* \* \* \* \* \*

"We said just now that plaintiff was not entitled to recover for the remaining inter-

est coupons not due at the time the trustee declared the principal debt due and foreclosed therefor. This, we said, was for the reason that the moment the principal and accrued interest, *up to the time of the acceleration of the maturity* of the debt, are paid, the remaining undue interest coupons are discharged. For the same reason, contrary to the holding of the court, plaintiff is not entitled to recover on its second mortgage of $2,750; for, like the undue coupons, *having been executed to secure the payment of interest charged and unearned at the time of the acceleration of the maturity of the* debt, it also was discharged. * * *" (Emphasis supplied.)

In Dugan et al. v. Lewis et al., 79 Tex. 246, 14 S.W. 1024, 1026, 12 L.R.A. 93, 23 Am.St.Rep. 332, the principle of law involved here was under consideration in a usury case and the Supreme Court of Texas used this language:

"It is contended that as the deed of trust provides that on failure of the borrower to pay said note, or either of said coupons, or failure to comply with any of the stipulations contained in said deed of trust, the whole sum of money secured thereby may without notice to the borrower, at the option of the lender or his assigns, and at his option only, be declared due and payable at once, and the trustee was authorized to take possession and sell the land; and as default was made in the payment of the coupon due December 1, 1887, and the whole amount was declared due, the whole five years' interest became collectible, according to the terms of the contract, long before the termination of the five years, thus making the interest reserved greater on the happening of the contingency than 12 per cent. per annum, and the contract usurious under the laws of this state. We do not think that a correct construction of the contract will make a greater amount of interest due and collectible upon it than shall have accrued on the principal, calculated up to the date of collection at the rate named in the note, or, in other words, that any unearned interest comes within the proper meaning of the stipulation. *. * *"

In Stubbings v. O'Connor et al., 102 Wis. 352, 78 N.W. 577, 580, the Supreme Court of Wisconsin said:

"* * * Those two coupon notes fell due prior to July 15, 1891, when the plaintiff exercised his option, and declared the whole amount secured by the notes and mortgages as due and payable. By virtue of declaring such option, the whole amount became due and payable; and we perceive no rule of law authorizing interest upon interest which subsequently matured, and which, according to the findings, amounted at that time, in the aggregate, to $683.40. * * * The contract is very exacting and oppressive. While parties must be allowed to make their own contracts, so long as they are made understandingly and not in violation of law, yet there is no reason in the case at bar for allowing interest not specifically provided for in the contract. That portion of the judgment of the circuit court allowing such excess of $683.40 is reversed, * * *."

In the case of In re Norcor Manufacturing Company, 36 F.Supp. 978, 980, the District Court, for the Eastern District of Wisconsin, had before it a very similar question to that involved in the case at bar, and the court held:

"There is no statutory authority for allowing compound interest on claims that are allowed in bankruptcy. After the filing of a petition, a creditor usually forgets about interest because in the ordinary bankrupt estate there are not sufficient assets to pay the face of the claims. Very occasionally, as here, due to good management or other fortuitous circumstances, the debtor becomes solvent. The only effect of such change in status of the debtor is that the accrual of interest, which was stopped or suspended by the filing of the petition, is in effect reinstated. The suspension of such an accrual of interest is lifted, but all that the creditor is entitled to is the face of his claim, plus accrued interest at the legal rate to the date of payment."

Counsel for applicant, in support of its position, cite the case of Chase National Bank of City of New York v. Citizens Gas Company of Indianapolis et al., 7 Cir., 113 F.2d 217. A careful examination of the facts in that case makes it clear that it does not apply to the instant case. There the suit was to recover on delinquent and unpaid interest coupons under the deed of trust. Here the Indenture Trustee is claiming interest upon the whole indebtedness at an accelerated maturity date, that date being September 25, 1939, and interest on the unmatured interest coupons. At the date of acceleration there were no delinquent or unpaid interest coupons. The whole indebtedness was by the act of acceleration made to mature on that date. Thereafter

the coupons attached to the bonds were discharged and under the plain language of the bond, the interest due would be at the rate of five per cent. per annum from the date of the accelerated maturity, or September 25, 1939, until paid.

The claim of the applicant was duly filed herein as a secured claim on February 10, 1940. It was duly allowed in compliance with the views herein expressed and has been paid in full. I see no reason to construe the order of December 9, 1944, by modification, or to vacate the same as being incorrect, as contended by the applicant.

The application, therefore, is denied and an exception allowed. A form of judgment consistent with this opinion may be submitted within five days from this date.